# SUPREME COURT

AT THE

## JANUARY TERM, 1879.

---

**Present:**

.Hon. DECIUS S. WADE, Chief Justice.
Hon. HIRAM KNOWLES, } Justices.
Hon. HENRY N. BLAKE, }

---

MEYENDORF ET AL., respondents, *v.* FROHNER ET AL., appellants.

ESTOPPEL BY RECORD.  To be able to plead a judgment in estoppel it must appear that precisely the same point was in issue at a former trial.  A party is estopped only by a title that he put in issue in a litigation, or that he might have so put in issue.

OUTSTANDING TITLE — *location* — *purchase.*  A party ousted of possession under one title is not estopped from purchasing another outstanding title subsequent to the first action, and asserting his right thereunder.  Acquiring mining ground by location is procuring such right by purchase.

RELOCATION OF MINING GROUND — *fraud.*  A party in possession of mining ground under a title subsequently determined in court as invalid may without fraud, relocate such ground and thereafter perfect such title in accordance with the United States laws.

SUBSEQUENTLY-ACQUIRED TITLE — *to whom it inures.* A subsequently-acquired title only inures to the benefit of a purchaser from the party who so acquires the same, and not of one who has acquired possession and title by judgment.

ESTOPPEL *in pais.* To constitute estoppel *in pais* the answer should allege that the false representations were made with intent that the opposite party should act upon the same.

FRAUD IN PROCURING A PATENT — *who may attack.* Where fraud has been practiced in procuring a patent from the United States, only the United States can attack such patent.

CROSS COMPLAINT. A cross complaint should be set up separate from those portions of an answer intended for defenses. It should be complete in itself.

EQUITY — *trustee and cestui que trust.* A party must first show himself entitled to a patent from the United States upon his equitable title before he can have another who has secured a patent title by alleged fraudulent means, adjudged a trustee of such title for his use.

DEFENSE — *new matter — general denial.* Under a general denial a defendant may give in evidence title in himself, and such allegations in the answer do not constitute new matter or present a new issue. A demurrer to such an answer admits only so much as goes to make a proper defense, all else may be rejected as surplusage.

### *Appeal from First District, Jefferson County.*

THIS cause was tried in the court below by BLAKE, J. The appeal was taken from the judgment of the court sustaining the demurrer to defendants' answer.

E. W. & J. K. TOOLE for appellants.

The pleadings and record in this case disclose the following facts: That on the 9th day of June, A. D. 1872, two of the above-named defendants, John Barta and Jacob A. Frohner, located two pieces of mineral land which they designated as the Cannon and Cannon Extension Lode claims. That such locations complied substantially with the requirements of the statutes applicable thereto, and that said claims were held by the locators in pursuance of such statute and the local rules and regulations of the district in which the same were situated; that in August, A. D. 1873, one John Rodgers *et al.* entered upon the said property and located the same under the name of the Star of the West lode. On the 5th day of September following, the said Frohner and Barta instituted their action of ejectment against said Rodgers *et al.* and that the controversy finally terminated in a judgment in favor of the said Cannon and Cannon extension claims and

against the said Star of the West. That whilst said action was pending and said plaintiffs were kept out of possession wrongfully by defendants, one Arthur B. Agno, under an arrangement and in collusion with the defendants, entered into possession of said property and undertook to carry on the defense of said action for an interest in the said Star of the West claim.

That whilst said Agno was so in possession he conspired with said defendants to, and did change the name of said Star of the West claim for the purpose of avoiding any judgment that might be recovered in said action. That in pursuance of this arrangement the name of said claim was changed to the Nelly Grant, and the location and record thereof made in the name of said Agno. That said Agno defended said action and held possession of said property until judgment was rendered therein on the 30th day of August, 1875, in favor of plaintiffs. That on the 2d day of September following, said Agno and said defendants were removed from possession and the same was on that day restored to plaintiffs, upon a writ of restitution issued upon the judgment. And this was the first possession obtained by plaintiffs since their eviction from the property. That on the 29th day of November following the service of said writ, said Agno, during the temporary absence of plaintiffs, went upon the property and posted notices of his application for a patent on the same and that said property was so situated in the mountains as to be utterly inaccessible during the months selected by him for the publication of said notice. That by said notices said Nelly Grant did not purport to be a relocation of the Cannon and Cannon Extension lode, and neither did it appear to be a relocation of the Star of the West lode, and that the plats filed in the proper surveyor's office in Helena City for the District of the Territory of Montana showed that the said claims were not identical. It also appears that all of this was done to elude and deceive the claimants of the Cannon and Cannon Extension lode, and to take advantage of their inability to procure a survey showing the conflict in said claims, in order to interpose an adverse claim to his application which he seemed to consider necessary. That he several times mentioned his application for a patent to the Nelly Grant, but

at all times told plaintiffs that it did not conflict with their Cannon and Cannon Extension claims. That when plaintiffs were enabled to return to said property, and after the publication of notice of said Agno application had . expired and the time for interposing their adverse claim in the land office had passed, they discovered, for the first time, that said application did embrace said Cannon and Cannon Extension lodes. The plaintiffs at once filed their *caveat* and judgment-roll, showing the privity of said Agno to said judgment, which, with the other papers, were transmitted to the commissioner of the general land office. That for some cause the said judgment-roll and *caveat* were ignored by that department and a patent issued to said Agno in pursuance of his application on the 30th day of March, A. D. 1876, being within four months after such application was made. That in the mean time and whilst said claimants of the Cannon and Cannon Extension lode were in possession of the same, under their judgment and process issued in pursuance thereof and whilst they were in open, notorious occupancy of the same, said Agno sold and transferred his inchoate interest in said "Nelly Grant" lode to plaintiffs and respondents in this action. That after the said Agno had obtained said patent, said respondents, by virtue of their title theretofore acquired, instituted this action. The appellants by their answer, in addition to the general denial of all title or right of possession in respondents, set up the foregoing facts, together with other equitable defenses, and affirmative matter which will sufficiently appear by the argument and points hereinafter presented The court below held that the affirmative matters and defenses set up in the answer were insufficient to constitute a defense if proven. Respondents introduced their ·deed and patent, judgment was rendered in their favor, a bill of exceptions duly signed and appellants appeal to this court.

Eight propositions were especially relied upon by appellants in their original brief, filed in this court, viz. :

First. That by reason of the equitable, as distinguished from the legal jurisdiction, separately conferred upon the several courts of this Territory by its Organic Act, the limitations thereby im-

posed upon the legislative assembly precluded it from convert-ing equitable titles into legal ones so as to authorize the enforcement of rights thereunder in a court of law, and that the inchoate rights conveyed by Agno to respondents before the issuance of the patent to him will not support ejectment.

Second. That the property in controversy was appropriated lands and not subject to relocation under the mineral land laws of the United States. That Agno's pretended relocation and entry was void, and that there was nothing upon which to base a patent or to which it could relate, so as to confer a right of possession upon the patentee, as against appellants in possession, and who were entitled to said property at the time of such pretended location by reason of which *in an action of ejectment* by the patentee they may question the *validity* of the patent or the right of possession under it.

Third. That said patent is void on account of the fraud in making the proofs in the land office to obtain it, and that this fact will defeat an action based upon such patent.

Fourth. That the fraud perpetrated by the patentee upon the appellants enables them to invoke their *equitable defense in connection with their possession*, so as to defeat a recovery in this action.

Fifth. That said Agno is estopped by the judgment rendered in favor of the claimants of the Cannon and Cannon Extension lodes, by reason of his privity, and that his grantees are likewise estopped.

Sixth. That by reason of the actions and declarations of said Agno, by which appellants were prejudiced, he is estopped from asserting any claim to said Cannon and Cannon Extension property on account of his pretended Nelly Grant title.

Seventh. That said respondents, grantees of said Agno, took said property subject to all the rights and equities of appellants and that they can assert the same not only by way of defense, but compel a conveyance of said property in accordance with their prayer for affirmative relief.

Eighth. That appellants, on account of the facts pleaded, were not required to interpose an adverse claim in the land office.

That if they were, sufficient excuse is shown for not doing so. That they do not waive any *equitable right* by a failure to interpose said claim, and that they are not prevented thereby from resorting to a court of equity to protect the same.

In answer to this original brief, respondents have interposed a very elaborate argument to which appellants are called upon to reply.

The utter want of established precedents by judicial decisions, directly in point under the statutes of the United States so recently passed in reference to its mineral lands, and the consequent necessity of resorting solely to deduction from analogy of reported cases to the one at bar, together with the number and importance of the propositions involved in this controversy, have rendered this reply much more prolix than would otherwise have been appropriate or necessary. If, however, we have been able to contribute any thing in inaugurating the correct theory upon which the rights of parties, under this comparatively novel proceeding, are to be determined, we shall feel amply compensated for whatever of labor we have bestowed upon it.

Under the *first* proposition before stated, it is conceded by the respondents that the title conveyed by Agno prior to the issuance of the patent was an equitable one, but they insist that as the patent has since issued the legal title thus acquired by the patentee inures to the benefit of his grantees. And they cite the case of *Shepley et al.* v. *Cowan et al.,* 1 Otto (91 U. S.), 330 *et seq.*, in support of the doctrine that the patent dates back by relation to the first acts, that is entry and location, which were indispensable to its procurement, and that it shuts off all *intervening* claims and vests the strict legal title in the patentee. As appellants claim by priority of right, entry and location, they are in no wise affected by the propositions thus announced. The other authorities cited by respondents under this head support similar propositions. But how does this in any way relieve the respondent? Their rights, if any they have, were *intervening* rights, acquired after the entry and location of Agno and before he procured his patent. The legal principle enun-

ciated is that the strict title vested in Agno, the patentee, and dated back for its inception, so far as he was concerned, to his location; but that so far as intervening claims or rights are concerned, they were entirely cut off; that is to say, that this transfer of an inchoate right in Agno clothed his grantees with such an equitable estate; that a court of chancery would treat the patentee as a trustee and compel a conveyance, or otherwise invest the *cestui que trust* with his legal title. It is true that while the *legal title* remained in the government, the grantees of the patentee might have maintained ejectment *before* the *issuance* of the patent; but after the Commonwealth parts with this *legal title* and vests it in an individual, the statutes of the United States upon this subject are no longer applicable, and the doctrine announced in *Shepley et al.* v. *Cowan et al.* at once obtains. This inchoate title under the law and decisions is merged in the patentee and not the *intervening* claimant. That while this title is thus imperfect a third party is not permitted to show the legal title in the government is the reason why ejectment may be maintained between individuals before the strict legal title vests in the patentee. That the title, if any, acquired by respondents by virtue of the conveyance between the date of the location by Agno and the issuance of the patent to him is purely equitable there can be no longer a question. There is, however, another proposition, coming, as it does, under apparent sanction of legislative authority, of more serious import than any of the points before considered. No note is made of it by counsel in their argument, but as it is necessarily involved in the solution of this proposition, we propose briefly to consider it. By section 32, Codified Statutes of Montana, page 401 : · "If any person convey any real estate by conveyance or instrument purporting to convey the same in fee simple absolute, and shall not at the *time* of *such conveyance* have the *legal estate* in such real estate, but shall afterward acquire the same, the legal estate subsequently acquired shall immediately pass to the grantee, and such conveyance shall be valid as if such legal estate had been in the grantor at the time of the conveyance." The legislative assembly recognizing the fact that the grantee in such case only acquired

an equitable estate in the property, evidently designed by this law
to raise such title to the dignity of a legal one, so as to enable
the grantee to maintain ejectment without the necessity of resort-
ing to a court of chancery to secure by its decree the legal title.
Can this be done, especially in cases of title emanating, as does
the one at bar, directly from the government by its patent? But
for this statute he would be compelled to resort to the court
of equity to perfect his legal title before he could recover at law.
Thus the act of the legislature ousts the equitable jurisdiction of
the court. Can it be done? We say not. First, because the legal
claim of respondents was adverse, that is *it set in since* the claim"
of Agno, and was therefore waived by the proceedings and
issuance of the patent, under sections 2325 and 2326 of the Re-
vised Statutes of the United States. Second, for the reason that the
government has the right to declare the character and dignity of
titles conveyed by patent and has declared the same to carry to
the patentee the strict legal title, as will be seen by reference to
the case of *Baynell* v. *Broderick.* 13 Pet. (U. S.) top page 240
*et seq.* And thirdly, because under the Organic Act of this Ter-
ritory, the legislative assembly cannot deprive the court of its
equitable jurisdiction or transfer such jurisdiction to a court of
law.

It cannot convert equitable into legal rights or legal rights into
equitable. This would involve the power to utterly annihilate
either one or the other of these jurisdictions at the will of the Terri-
torial legislature, and thereby defeat the operation of the Organic
Act, the Constitution of the Territory. It can regulate or even blend
the practice, but it cannot abrogate the distinction or destroy the
jurisdiction of the courts over law and equity cases. In support
of this position, we cite section 9, Organic Act of Montana Ter-
ritory ; Laws of the United States for 1875, pages 33, 34 ; *Bag-
nell* v. *Broderick*, 13 Pet. 240, and dissenting opinion of
McLEAN, J., 244–246 ; *Fenn* v. *Holme*, 21 How. 482 ; *Hooper*
v. *Scheimer*, 23 id. 248–9 ; 2 Black. And see, also, 7 How.
846–7 ; 9 Pet. 632 ; and especially *Gilmer* v. *Poindexter*, 10
How. 257 ; *Swayze* v. *Burke*, 12 Pet. 11 ; *Hooper* v. *Scheimer*,
23 How. 235 ; *Sheirburn* v. *Cordova*, 24 id. 423. Our courts,

so far as the question of jurisdiction is concerned, are on the same footing as the Federal courts.

If the legislative assembly can do this in one instance it can do it in all, and by one general act declare all equitable titles to be legal ones, thereby effectually and entirely abolishing the equity jurisdiction of the courts. It is the province and duty of the courts to uphold the laws of congress, and see that the respective jurisdictions are not encroached upon by local legislative enactments. The decrees of courts of chancery upon equitable titles must and should emanate from and speak the conscience of the chancellor, even though the case is tried to a jury.

Having thus briefly considered the first proposition, we pass to the second. The facts set up in the answer show that the claim of the appellants to the Cannon lode set in prior to the pretended relocation of the Star of the West or Nelly Grant; that this piece of property had ceased to be public lands, was no longer open to relocation, but was appropriated and held by appellants under section 2322 of the Revised Statutes of the United States; that by reason of a substantial compliance with the terms of the act, they had acquired a vested right by a grant from the government; that this right had been judicially determined by a court of competent jurisdiction, and that respondents are bound by the judgment. The only condition upon which the claim became subject to relocation is provided by section 2324 — upon a failure to do the annual amount of work required. That forfeitures are odious in law and do not occur by implication is a proposition too plain to require the citation of authority in support of it. A right once acquired may be lost by adverse possession or voluntary abandonment, but if taken against the will of the owner, the authority for so doing must rest in some unequivocal provision of the statute. If the relocation then by the patentee was voidable, one having the older equitable title can defeat his recovery under the patent. The issuance of the patent makes the entry conclusively valid in law as against an *adverse claimant*, that is, one whose claim set in subsequent to the entry of the patentee. See *Shepley* v. *Cowan, supra;* 1 Otto, 330 *et seq.; Hoofnagle* v. *Anderson,* 7 Wheat. 212, 248.

A party may have the simple naked evidences of title without any of the rights that are incident to. it. The legal title may be in one and the right of possession in another. The possessor may have such an equitable title against the patentee as will defeat his recovery (see *Boardman* v. *Lessees of Reed et al.*, 6 Pet. 342, top p. 137), and all of the necessary preliminary steps will be investigated by a court of chancery, under a claim asserted by priority of right. We insist that Agno's entry and relocation was void and unauthorized; that by reason thereof his patent did not carry with it the right of possession, especially against the prior title asserted by appellants. It is clearly demonstrated by the authorities heretofore cited that by relation the patent dates back to the first steps essential to its procurement, and that the *right* to *possession* under it as against one in a position to question such right must depend upon the validity of those preliminary steps. The original act must be valid. The relocation must have been authorized. Relation cannot be had to a void act. *Doe* v. *Howland*, 8 Cow. 277; *Jackson* v. *Stevens*, 16 Johns. 110; *Williamson* v. *Field*, 2 Sandf. Ch. 533, 568. No authority can be found to the effect that a patent makes an unauthorized entry valid; upon the contrary, if the lands were not "open to relocation," the patent would be inoperative. See *Belk* v. *Meagher et al.*, decided at the present term of this court.

If the relocation of Agno was voidable, it shut out only *intervening* or *adverse claimants*. Those alone are concluded by the patent. See *Shepley* v. *Cowan*, 1 Otto, *supra*. Appellants assert rights under the doctrine —*prior est tempore potior est jure.*

The third proposition arises out of the allegations in the answer; that the proof made by said Agno, in order to procure a patent, was false and fraudulent; that he made his false affidavit; that he had been in possession a sufficient length of time to acquire a title by the Statute of Limitation; that he made false and fraudulent affidavits as to the value of work done, and procured by fraud the certificate of the clerk of the district court to the effect that there was not and had not been any litigation pending in reference to said property; that he was enabled to procure said certificate by fraudulently changing the name of

said property, in order to avoid the judgment in favor of appellants and against Rodgers *et al.*, under and in collusion with whom he entered in o possession of said property pending the litigation. We shall content ourselves upon this point by referring to the case of *Johnson* v. *Townsley*, 13 Wall. 72 *et seq.*, where the supreme court of the United States lays down the doctrine that when the officers of the land office have been imposed upon by fraud, false swearing and mistake, the judiciary will not interfere so long as the matter remains in their hands for action, but that after the title has passed from the government to individuals and the question has become one of private right, the equitable jurisdiction of the courts may be invoked for the purpose of determining whether or not the patentee does hold in trust for another.

The facts set up in the answer comprising the fourth proposition heretofore presented disclose a case peculiarly cognizable in a court of chancery. The relief sought is purely of an equitable character, and cannot be obtained in any other tribunal. The averments are, that whilst the suit was pending between the Cannon and Cannon Extension lodes and the Star of the West, said Agno entered into possession under the Star of the West title, and undertook to defend for an interest in it; that for the purposes of avoiding the judgment, he conspired with his co-tenants in the Star of the West, and changed the name of the same to the Nelly Grant; that by means of the litigation carried on by him he managed to keep the owners of the Cannon and Cannon Extension out of possession; that they were reinstated in that possession on the 2d of September, 1875, and that during a temporary absence from the property, Agno, on the 29th of November, proceeded to the premises and posted his notices of his application for a patent for the same; that within five days after such notices were posted it became utterly impracticable for the claimants of the Cannon and Cannon Extension to return on account of the great depth of the snow; that the plats he returned to the office of the surveyor showed the property thus applied for to be in a different locality, and that the same was

not identical with the Cannon and Cannon extension lodes; that he fraudulently represented to appellants that the property so embraced in his application did not conflict with their claim, and that appellants from these facts were compelled to and did rely upon such representations. We hold the established doctrine in such case to be, that where the superior rights are with persons other than the patentee, courts of equity will treat him as a trustee, to get at him. It can make no difference whether such trust is created by the express intention of the parties, or by fraud independent of such intention. See 3 Washburn on Real Property, 174–179, and note ; 1 Story's Eq. Jur. (9th ed.), §§ 1195, 258, 259, 295. See, also, authorities cited under 12th subdivision of appellants' original brief filed in this cause. And we insist that under our system of practice legal and equitable actions may be united and blended in one, and that equitable defenses to an action of ejectment, or other legal cause of action, may properly be interposed, subject alone to the well-established rules governing the respective jurisdictions which we have before considered. The principle announced in the case of *Johnson* v. *Towsley*, 13 Wall. 84, 85, shows that the doctrine that the legal title must prevail in ejectment only obtains in those courts where such equitable defenses cannot be interposed. The case of *Hornbuckle* v. *Toombs*, 18 Wall. 648, is to the effect that under our Organic Act, the legislative assembly of the Territory may regulate the *practice* in equity cases ; and under the following authorities it will be seen that under sections 1, 56, 59 and 60 of our Civil Practice Act, the right to maintain an equitable defense to an action of ejectment is amply provided for. See *Cary* v. *Goodman*, 12 N. Y. 266 ; *Hoppough* v. *Stubble*, 60 id. 434 ; *McAlpen* v. *Henshaw*, 6 Kans. 176, 191 ; *Ayres* v. *Bensley*, 32 Cal. 620 ; *Rose* v. *Treadway*, 4 Nev. 459, 460. And such was the opinion of this court in the case of *Reece* v. *Roush et al.*, 2 Blake, 586, where the rule is laid down that affirmative relief need not be asked or granted, but may be asserted purely by way of equitable defense to the action. In the case of *Estrada* v. *Murphy*, 19 Cal. 249, 272, 273, Mr. Justice FIELD says, in substance, that when under such statutes this equitable defense may be interposed it in no

wise conflicts with the established precedents that in ejectment the strict legal title must prevail in courts of law. It will be seen, also, by reference to *Stark* v. *Starrs*, 6 Wall. 402, 409, appellants set up facts entitling them to affirmative relief under chap. III, p. 94, Cod. Sts. of Montana.

Upon the 5th proposition, that Agno, the patentee, is estopped by reason of the judgment recovered for the same property by the Cannon and Cannon Extension lodes against the Star of the West, we submit the following points and authorities:

1st. He purchased an interest in the Star of the West and went into possession pending the suit. See Freem. on Judg. 267, 299; Cod. Sts. 29, § 16; id. 95, § 312; *Merle* v. *Matthews*, 26 Cal. 475; 1 Story's Eq. Jur. (10th ed.) 405, 406, 407; *Marshall* v. *Shafter*, 32 Cal. 195; *People* v. *Wilson*, 26 id. 125, 126, 127; Herm. on Estop. 55, §§ 61, 63; *Walden* v. *Bodley*, 9 How. (U. S.) top p. 28, 29.

2d. He agreed to defend that suit and was amenable to the writ of restitution issued in it. Herm. on Estop. 46; Freem. on Judg. 146, 147; *Peterson* v. *Lathrop*, 34 Penn. 223.

3d. If Agno was bound by this judgment he was under the same obligation to redeliver possession before he could build up a title, on *account* of the possession thus acquired, as those against whom it was rendered. *Satterlee* v. *Bliss*, 36 Cal. 516; *Byers* v. *Neil*, 43 id. 210.

4th. His title, if he ever had any, was extinguished in the judgment before it reached the conveyance to respondents. *Campbell* v. *Hall*, 16 N. Y. 581; 1 Iowa, 23; 6 id. 188; 8 id. 326; 24 How. 362; *Bludworth* v. *Lake*, 33 Cal. 262, 263.

5th. And this judgment concluded the rights of all the parties bound by it as they existed at the very date of its rendition. Freem. on Judg. 211; *Marshall* v. *Shafter*, 32 Cal. 195; *Sherman* v. *Dilley*, 3 Nev. 21–27; *People* v. *Strasburg*, 2 Bibb, 523. Many of these authorities show that the respondents, grantees of Agno, are likewise bound whether they purchased before or after the judgment. Besides charging respondents with actual notice, the answer avers that at the time they purchased appellants were in the actual, open and notorious possession of the

property. That this charges them with all the equitable rights of appellants, and leaves them in no better situation with respect to them than Agno, their grantee. See authorities cited in appellants' original brief under eighth subdivision.

The position taken by respondents, that the judgment thus pleaded operates neither as a bar nor estoppel in this action, proceeds upon the assumption that the title acquired by Agno and conveyed to respondents was subsequent to the institution of the action, in which such judgment was rendered. It is conceded that this Nelly Grant claim is the newly-acquired title sought to be established. We contend that the facts set up in the answer negative the idea and preclude the possibility of the acquisition of any such title by him. For illustration : Suppose the respondents had set up this pretended new title in manner and form as averred in the answer — which for the purpose of this case must be taken to be true — how, then, would the case stand? They come into this court and allege that Agno purchased in the Star of the West, went into possession under and in collusion with the claimants of said lode, during the pendency of an action against them by appellants ; by means of the defense of said action kept them out of possession, changed the name of the property to the Nelly Grant to avoid the judgment, all of which was done before the property was returned to appellants, and before the writ of restitution issued upon this judgment was served upon him. What new right has he acquired? Can he make this tortious possession the basis of establishing a new title? This class of titles are the sole offspring of possession. It is not like the acquisition of a title from a source independent of possession. If this principle is to prevail we have the astounding problem established by judicial decision, that by the maintenance of litigation by one in the wrongful possession of the property of another he can make that possession the source of acquiring a superior title. That an adversary claiming from a common source can intrude himself into the possession of property and defeat the rights of the true owner, for the sole reason that such owner invokes the aid of the courts for his protection. The law would cease to be a pliant instrument in the hands of

justice, and the court transformed into a tribunal that frowns upon right and smiles upon wrong. As well might respondents, without title or equity, avail themselves of a legal remedy for the maintenance of a wrongful possession of the property of appellants, and invoke the benefit of the Statute of Limitation during the pendency of the action. There is no difference in the two cases. They would both have their origin in and result from possession "*pendente lite.*" The true theory upon which the solution of this case depends is settled by the authorities cited by both appellants and respondents. The patent is but the evidence of a grant or title acquired by location. It gives no new title, and this is the very title that was tried. It was merged or extinguished by the judgment in which Agno, the patentee, and his grantees are bound as privies. If Agno, the patentee, had surrendered his possession to appellants as he was under a legal obligation to do, or the service of the writ of restitution had dispossessed him, he would then have been in a situation to have afterward made a new location, and thereby relieved himself from the binding force of the judgment. The authorities cited by respondent all bear out this view of the case. In discussing the question as to what is a newly-acquired title in similar cases to the one at bar, the court, in *Judson* v. *Malloy*, 40 Cal. 299, cited by respondents, say : " We do not understand that Montgomery *obtained the title* or was *enabled* to *pre-empt* by reason of any settlement prior to the sheriff's sale. If at that time he had an inchoate right which afterward ripened into a title, there would be some plausibility in the position of defendant. But as we understand the findings of fact, Montgomery was allowed to preempt by reason of a settlement made *after* he had been ousted from the land under Whiting's judgment. The judgment was not a bar to any title acquired by Montgomery *after its rendition.*"

This authority bears out the proposition that notwithstanding a patent may issue after the rendition of a judgment by which the patentee is bound on account of a location made before the judgment, the judgment will prevail. His patent is but the evidence of the title tried, and dates back for its inception to the

first necessary act done to procure it ; that the location was this act and that he was therefore bound as to all title he had at the date the judgment was rendered; that, like the case at bar, he should have surrendered the possession and location made before the judgment, and entered and located under a new claim to acquire a new right; that without doing so he was in no situation to assert his patent title against the judgment. And this, we believe upon principle and authority, is the correct doctrine upon this subject. See *Judson* v. *Malloy*, 40 Cal. 299 ; *Byers* v. *Neal*, 43 id. 211 ; *Bludworth* v. ¯*Lake*, 33 id. 262, 263 ; 1 Iowa, 23 ; 3 Wash. on Real Prop. 178 *et seq.*

If, then, Agno was bound as a privy to this judgment, and he acquired no new title by his patent, the title he had expended itself in or was at least extinguished by the judgment, and he was and is amenable to its process. Respondents, however, notwithstanding these authorities, still insist that the judgment was only conclusive against the Star of the West. Upon the same reasoning we can as safely contend that it was an adjudication in favor of the Cannon and Cannon Extension lodes, and established its title to the *very piece* of property in controversy at the date the adjudication was made. These judgments are based upon proceedings so much in their nature in *rem* that they should be held conclusive as to all persons whose rights set in before its location. More especially should this be so, as against one who acquired possession, as did Agno, and in collusion with the claimants of the Star of the West changed its name to avoid the judgment. See *Murry* v. *Fredericks*, 9 Dana, 202, 203 ; *Lytle* v. *Arkansas*, 22 How. 193.

The authorities cited by respondents, supporting the general doctrine, that when the law establishes a particular tribunal, and provides a remedy, it should be pursued, would be good law and applicable if appellants were seeking to control the action of the officers of the land office. These officers are vested with certain powers and charged with certain duties in their department, by which the government is divested of the legal title to certain portions of the public domain subject to entry. As this subject will be hereafter more fully considered under a different head, we dismiss

if for the present. Another position upon which respondents seem to rely with much confidence, " That as it appears from some of the facts set up in the answer, Agno obtained his patent by the perpetration of fraud in his proofs before the officers of the land office," the only remedy afforded is by a proceeding on the part of the government to set it aside, is not supported by any of the cases cited, when applied to the one at bar. These citations, with the exception of *Boardman* v. *Lessees of Reed & Ford*, 6 Pet. 328, are either cases in reference to patent rights in which the government and people are directly interested in canceling patents obtained by false suggestion and which bear no analogy to the equitable doctrines of trusts applicable to real property, or else they are cases originating in the courts of the United States, where equitable defenses and relief of this character are not afforded in actions of ejectment. In the case cited the court say: " When an individual claims land under a tax sale he must show that the substantial requirements of the law have been observed. But this is never the case when the claim rests upon a patent from the United States. *The preliminary* steps may be investigated in *chancery* when an elder right is asserted; but this cannot be done at law." This establishes the principle contended for by appellants, that the patent carries with it the presumption that the patentee is the legal owner of the property conveyed, and that the preliminary steps necessary to its procurement have been complied with, and that these presumptions can only be overcome and these facts inquired into by one having a prior or equitable title in the property. Conceding, however, that the government might interpose on behalf of one having a superior right in the patented lands to set it aside, this does not preclude such person from instituting his suit in a court of equity to declare the patentee a trustee and compel a conveyance, or obtain other appropriate relief. The supreme court of the State of Arkansas, upon the authorities cited by respondents, sustained their position; but the case found its way into the supreme court of the United States and was on that point reversed. See 18 How. 43; 20 id. 8; and especially 22 id. 202 *et seq.*, and 13 Wall. 72. In connection with this proposition respondents also refer to the latter portion

of section 2325, U. S. Rev. Sts., and contend that we are limited to the mode therein pointed out. This is true, so far as any objection to the issuance of the patent is concerned. The provision was evidently intended to afford an opportunity of showing that the *necessary proofs were not made before the land office*, so as to avoid the presumptions arising by reason of the issuance of the patent against one having a prior equitable right to the property. The law provides that upon making a certain showing in *that office* the applicant shall be entitled to a patent; that is, the government passes to him the legal title. It does not even indulge the inference that one having the prior equitable title because of a failure to interpose this objection, is thereby precluded from showing in the proper *court* that the *proofs* and *showing* made were false and fraudulent. Under similar statutes, giving this remedy and providing that the action of these ministerial officers "shall be final," it is confined solely to the question of the issuance of the patent; but when issued, the courts have constantly held that it is subject to the equitable rights existing between the patentee and third parties. The government only assumes to clothe the *patentee* with the strict legal title, but does not thereby sanction any fraudulent practices, or relieve him from any equitable obligation he may be under to his fellow man. Many authorities might be cited showing that this right and remedy is not exclusive. See *Wilson* v. *Castro*, 31 Cal. 420; *Barnard* v. *Ashley*, 18 How. 43. If, however, such was the case, it will be seen from the answer that under this section of the statute, appellants did file a copy of the judgment-roll with proof of the privity of Agno to the judgment, showing that the certificate of the clerk was fraudulently obtained by reason of changing the name of the lode, and the case of *Johnson* v. *Towsley, supra,* establishes the doctrine that if the judgment bound Agno and the officers of the land office erred in their *construction* of the law in that behalf, the court will correct it, and award the property to the one lawfully entitled to it.

Respondents also cite authority to the effect that the action of ejectment is a possessory action, and that the legal title may be in one person and the right of possession in another. They also

contend that there was no error in rendering judgment upon the answer for the reason that appellants do not show that they are entitled to a patent, *i. e.*, affirmative relief. How these two positions can be easily reconciled we are unable to see. They seem to overlook the fact that *they* are seeking to recover in this action, upon their *title* and *right* of *possession*, and that the defendants may in such case invoke an equitable title to defeat a recovery without obtaining affirmative relief. This court so held in the case of *Reece* v. *Roush*, 2 Blake, 586. It by no means follows that respondents must recover unless appellants are at the *very time* entitled to a patent from the government.

We have shown that this property was not subject to relocation and entry by Agno at the time he entered. It was withdrawn from market so far as he was concerned. He was prohibited from making the entry. If the land was not subject to private entry by any one, there might be something in the position of respondents that appellants were in no situation to obtain a patent. In such case no title would pass by the patent, and the patentee would be in no situation to be treated as a trustee on that account. Under the mineral land law, it is true, the person actually entitled to a patent may never procure one, and yet the lands are subject to entry. In such case it matters not with the government who gets the legal title ; its demands are satisfied when the necessary proofs are made and the price paid for the land. After the emanation of the patent, the question with the government who may eventually be entitled to the property ceases to be one of importance. It then becomes one of private rights as between individual claimants. The real question in such case is, had the patent not issued, who had the better right to it ?

The answer does show that appellants are in a situation to make all the necessary proofs and obtain a patent but for the patent of respondents. The authorities show that in many instances the courts have treated the patentee as a trustee and compelled a conveyance, when at the time the *cestui que trust* was in no situation to make the necessary proofs to procure a patent in his own name. When the trustee has done all that is requisite and

procured a patent, whether he be a trustee on account of privity of contract, or of an express or constructive trust, it inures to the benefit of the party for whom he should hold. They are constructive trusts dependent upon conclusions of law from a given state of facts or circumstances, independently of any contract, and frequently arise when there is no intention on the part of the parties concerned to create them. It is when the person holding the legal title to property cannot enjoy the beneficial interest, without violating some equitable principle. " In the one case the *acquisition* of the legal estate is tainted with fraud, either actual or equitable ; and the other where the trust depends upon some general equitable rule, independent of the existence of fraud." The facts in this case will bring it within either.

The whole question is whether, under the rules applicable to courts of equity, he should hold for the benefit of another. If appellants under such circumstances are to be turned out of possession, they might never be able to make the necessary proofs to procure a patent and their inchoate equitable title coupled with possession be forever defeated by the wrongful acts of the patentee. If appellants have an equitable title to. the property, and would have been in a position to have perfected their legal title by patent but for the wrongful acts of respondents, the courts will, as between the parties, treat such requirements of the law as having been fully complied with by the party having such equitable title. In no case will they ignore the doctrine that possession coupled with an equitable title will prevail in an action of ejectment, when the functions of a court of chancery are properly invoked.

We assert as the established precedent by the adjudication made in the supreme court of the United States, that a conveyance of a title acquired by patent may be enforced by one claiming under a deed, sale upon execution, a judgment recovered in a court of competent jurisdiction, or a trust created by the fraud of a patentee, even though such person had never made an entry upon the property, and could himself make no proof that would entitle him to receive a patent in his own right.

Respondents claim that the amendment offered to the answer

purporting to allege an estoppel of any claim of the patentee and his successors in interest to the property in dispute will not be considered in connection with the original answer; that the allowance of such an amendment was a matter of discretion in the court below, and that its ruling in that respect will not be reviewed unless it appear that there was an abuse of such discretion. An inspection of the bill of exceptions embodied in the record will show that the court did not reject the amendment for the reason that in *its discretion* the necessary showing to entitle it to be filed had not been made and proceeded upon the sole ground that the amendment would not aid the original answer, and that a demurrer would be sustained to the same if so amended. The discretion, to which the rule invoked applies, is in reference to the showing of facts entitling it to be filed. When it involves the judgment of the court solely as to the legal sufficiency of the plea sought to be filed, it presents a similar question for review as if the amendment had been allowed and a demurrer sustained to it. Hence we contend that the allegations set up in the answer and amendments to it, for the purposes of this action, must be taken as true.

Under this pleading, then, as one of the grounds of estoppel *in pais*, the following facts appear: That after appellants had filed the judgment-roll and affidavits in the nature of a protest, and before the issuance of the patent, they proceeded to the ground in dispute to perform the hundred dollars in labor required to represent it annually and no more; that while there for that purpose, Agno, the applicant for the patent, came upon the premises, tore down his notices, stated that he really had no right in the property, and would thenceforth never assert any claim to it; that appellants could proceed accordingly; that they relied upon such statements and acts, and were thereby induced to expend about $2,500 in work and money upon the property, which they would not otherwise have done; that they paid no more attention to their protest so interposed as aforesaid, and that Agno, the applicant, well knew that they were in good faith, relying on and acting under his said acts and declaration, and their said inducements were afterward ascertained to be willfully

and fraudulently made. The uniform current of authorities work an estoppel against said Agno and his grantees, who in this case are charged with having notice of appellant's equities, and forbid them, upon the stated facts, from asserting a title flowing from the rights said Agno then had. We respectfully submit that upon this point the plea was good and that appellants were entitled to a trial of the issues tendered by it.

A brief consideration of the remaining propositions, as to whether appellants are precluded from asserting these rights and equities by reason of a failure to interpose an adverse claim in the land office, within the time provided by the act of 1872, or whether from the facts of this case it was a proper one to be so interposed, and if it was, has sufficient excuse been offered for not doing so, will conclude this discussion. It is contended on the one hand that this failure incurs a forfeiture of all rights and equities of appellants, and that they consequently have no standing in the courts; while upon the other hand it is claimed that it only affects the action of the commissioner in the issuance of a patent with the incidents usual in such cases, and that the courts of the county are still open for the assertion of those rights and equities.

It may certainly well be claimed, that if appellants had filed their adverse claim and commenced suit as required by the act, and obtained judgment, the law would demand that the commissioner issue a patent to them upon filing the judgment-roll. So it is with the respondents, if they have complied with the formula required, and appellants have not, the law is equally imperative in imposing upon that office the duty of issuing them a patent. Yet, it is nevertheless true that, after the patent issues, in a court of law or equity, as the case may be, the principles applicable to the verity and effect of judgments will be enforced between the parties without regard to whom the patent has issued. The one department acts with reference to the issuance of the patent, while the judicial tribunals pass upon the rights of the parties concerned, *ex post facto*, the patent. It may be said that the judgment in such case is collateral to the application for a patent, and is of no binding force upon the *commissioners*. It

is nevertheless a judgment, and valid and binding in all tribunals where such judgments are recognized. The very object of the interposition of an adverse claim is to obtain an adjudication upon the rights of the parties as they existed at the time. If this has already been done by the court, to which it would be referred for that purpose, the judgment is conclusive between the parties and privies whenever the question arises in those tribunals, if not, in proceedings before the commissioner to procure a patent, to which it may be deemed collateral.

In those forums where the rights of one entitled to the beneficial estate prevails against the legal title, the legal title will be deferred and the judgment upheld. This rule is subject, of course, to the qualifications that no new right is conferred by the patent, or accrued since the rendition of the judgment. Which propositions, so far as applicable to this case, have heretofore been discussed under two distinct heads. It is then for the court to determine the validity and conclusiveness of judgments, except in the particular instances where the law imposes this duty upon the commissioner. In the case of *Seymour* v. *Wood et al.*, the officer of the Land Department, in passing upon the effect of the act referred to, and in a case arising under it, lays it down as the true rule, that when a party fails to interpose an *adverse claim* and commence suit within the time required, but has obtained a judgment in a court of competent jurisdiction for the *same property*, such judgment is not a bar to the issuance of a patent. His remedy is in the proper courts to have the patentee declared a trustee and compel him to convey the property for which the judgment was rendered. If then it was not a bar in the Land Office, it *was* in the very court where this action is now pending. What, then, is to be gained by having the court again render this judgment so as to prevent the issuance of the patent when the parties in possession of the property under a writ of restitution, properly enforced against the patentee, could invoke the judgment in defense of their possession or to compel a conveyance in an action instituted by the patentee or his successors in interest, who are alike affected by the judgment. It is not like entries and patents under the homestead law, where such rights

are expressly shut out. This right under the judgment was a legal right until converted into an equitable by the issuance of a patent, after which the beneficial interest was in the one and the legal estate in the other. We insist, then, that the claim of appellants, on account of the judgment, was not *adverse* in the sense of the act, but an adjudicated right as against the parties to, and the persons bound by it.

Again, we contend that aside from the judgment this was not an *adverse claim* as contemplated by the act referred to, in so far as the commencement of the suit required after the publication is concerned, for the reason that appellants' rights set in prior to that of the applicants for a patent. The statute upon this subject seems to have contemplated that the original locators would become applicants pursuing the theory of the courts upon this subject for the reason that their rights are not concluded by the patent. It denominates one of the parties *adverse claimants,* that is, those whose rights set in subsequent to the original claimants, or, in other words, relocators and adverse claimants are convertible terms. The act confers upon the *adverse claimants* the right to bring an action against a prior locator to determine the right of possession, and if he fails to do so, he waives his adverse claim and becomes a third party, from whom no objection will thereafter be heard, except that the applicant has not complied with the law. If there have been two relocators, and the intermediate relocator is the applicant, it devolves upon the second relocator, or adverse claimant as we call him, to bring the suit, and the appellant who is a relocator or *adverse claimant* as to the original locator — if he has not been made a party — must clear his title by suit against the original claimant. And such seems to be the opinion of the attorney-general, as will be seen by reference to Weeks on Mineral Lands, 15, 204 *et seq.* He must furnish his proofs that he was an original locator, or successor in interest of said locator ; or that he is a relocator *in possession,* and cleared the cloud upon the title of his predecessor in interest by suit for that purpose, or held and worked the property for a sufficient length of time to acquire a title by the Statute of Limitations. Copp's U. S. Min. Decis. 257.

And there is every reason why this should be so, unless the person making the relocation, in order to make it valid, is required to give in his record and notice a designation by name of the particular lode relocated. In the original location of the property the locator is required to so mark out the boundaries as that the lines may be readily traced. This with his record makes good his title, without visiting the premises for one year.

If a relocator goes upon the property he can at once see the name of the lode and the records will disclose the name of the locator. If he relocates and applies for a patent, he must bring suit on account of his *adverse claim*, unless he can show that he has held such adverse possession for the period prescribed by the Statute of Limitations, as provided by section 2232 of the act. It is not unfrequently, if not the case in nearly every instance, that the nearest claimant to the property located is situated many miles from it, and unless the relocation and notices designate it as a relocation, and name the lode relocated, the rights of the original claimant might become lost before the year had expired for a forfeiture, without even having notice that would reasonably indicate that such proceedings were pending. Such a forced construction of the act by the court to impart notice would become as obnoxious in a civilized country as the method provided by the laws of Caligula. It must be construed with reference to the legal terms used and the objects evidently to be accomplished. It is not like an application to enter a certain legal subdivision of the public lands designated by a particular quarter section, township and range, when the records of the land office will at once disclose the entries and names of the parties making it, and notice will be given him accordingly. Unless in mineral entries these requirements are observed in relocating the property, or such relocator is the one upon which the burthens of bringing an action to determine his right of possession is devolved, this law becomes a formidable weapon in the hands of a trespasser to be successfully used against the just rights of an unguarded and defenseless owner without even affording an opportunity to be heard.

Besides, the theory of the law is to uphold the older title until it is overthrown. The burthen of overcoming it is on the ad-

verse party. It proceeds so far as presumptions go upor. the theory, " first in time, first in right." And so strenuously have the courts upheld this doctrine, that in all cases they decide that a patent only cuts off *intervening* or *adverse* rights; that those whose rights set in prior to the emanation of the patent, that is, the first steps necessary to procure it are taken, are preserved from such a fate. We insist that this law was made with reference to the precedents established by these decisions; that they are founded in justice, and that a fair construction of the act does not militate against them. Besides this, the original claimant might be put to interminable litigation if he was fortunate enough to find out, or his title finally lost if he was not so fortunate, by a series of relocations in form original, as in the case at bar. Copp's U. S. Min. Decis. 257.

Besides the two foregoing reasons assigned, why appellants were not required under the act to interpose their claim in the land office and bring suit, viz. : 1st, Because of the estoppel of judgment ; 2d, because their claims were not *intervening* or *adverse*, but set in prior to the relocation of respondents ; there are other reasons equally cogent from the facts disclosed by the answer. It appears that the plats filed in the land office show that the Nelly Grant is not the same property as the Cannon and Cannon Extension lodes, and does not cover any part of those claims. This forms a part of the notice required by the act, and it is upon the sufficiency of this notice must depend the necessity of interposing an *adverse* claim, should a *prior location* be considered such a claim. The ground during publication was utterly inaccessible. The applicant claimed there was no conflict in the property, and the plats upon which the notice was based showed the locus of the Nelly Grant to be a different claim. How were appellants then to ascertain the facts? If they were affected with constructive notice by reason of the plats, those plats must furnish the necessary information. It is not enough that the party affected by the notice did not examine them. They must be such as to impart the notice had the inspection taken place. It would certainly be a serious perversion of all principle to permit an entry of lands other than those embraced in the field notes

and plats, which comprise a part of the application from which notice of the locus of the property is given, and at the same time declare the rights of other parties claiming the same property to be barred by limitations by reason of a failure to appear and assert that claim. The patent must follow the field notes and plats. The issues on this point show that by the patent the property is identical by the admission made in the record, whilst the fact that the plats do not show them to be identical is also admitted for the purposes of this argument. The patent has no support without the survey and plat as against one whose rights are to be affected by it. This affords, we contend, a good legal defense to the action, and valid excuse for not appearing in the land office, if we were required to do so. Again, the answer avers that the property was inaccessible during the publication of the notice, so as to render it impossible to procure the necessary survey to interpose their claim had they been apprised of the conflict. No action could be maintained to enjoin the officers of the land office, and the statute was one of limitation, without *within itself* providing any disabilities by which those officers were to be controlled. Yet in such cases this court decided at its last term in the *Territory* v. *Deegan* that a valid excuse might exist to avoid the legitimate consequences resulting from the express terms of the act. See, also, Copp's U. S. Min. Decis. 19 ; 2 Iowa, 11 *et seq.* ; 20 How. 6 *et seq.* ; especially 18 How. U. S., 1, 5, 6, 43 ; 17 id. 560.

If, however, under all the facts, it was necessary for appellants to interpose their claim in the land office and bring another suit, what is the penalty attached for not doing so ? To what extent, if any, do they lose their rights ? Is it a waiver of all rights, or is it a waiver simply of the right to oppose a patentee? Has the act, by reason of the remedy afforded by adjourning the controversy to the courts, thereby concluded all the legal and equitable rights of the parties failing to avail themselves of such remedy ? We contend that the decisions of the courts as well as the officers of the land department under similar statutes have universally held that this remedy is not exclusive except for the purposes of preventing the issuance of the patent. Under section 10, p. 326,

U. S. Sts. at Large, vol. 11, it is provided that the decision of the commissioner in *contested* cases, unless appealed from to the secretary of the interior, *shall be final*, using much stronger terms than the act in question, and no one doubts the power of congress to constitute them judicial tribunals for this purpose. Yet, in *Johnson* v. *Towsley*, 13 Wall. 72, a case arising under this statute, the court limit its operations to the applications for patents in the land office, and hold that it does not obtain in courts where the rights of parties to certain real property are determined according to the recognized rules of law and equity applicable to such courts and cases.

So we claim that sections 2325 and 2326 of the mineral land act is in reference to the steps necessary to be taken to procure a patent. In favor of the converse of this proposition and the doctrine contended for by respondents, will be found the dissenting opinion of CLIFFORD, J., in the case last referred to. Hence, in this case all that can be said is, that appellants might have prevented the issuance of the patent, and by not doing so they were placed in a situation requiring them to resort to a court of chancery to establish or defend their rights. Mr. Yale, who seems to have made these questions a specialty, in his valuable work on Mining Claims and Water Rights, p. 374 *et seq.*, asserts the principle that under the act in question, the real owner does not forfeit his right to apply to the courts for relief, by reason of a failure to interpose his claim and institute his action ; and he cites many authorities under analogous statutes in support of his position.

Under the laws of California, statutes 1859, p. 338, containing almost similar provisions for adjourning these contested cases in the land office to the courts for trial, the supreme court of that State held, in *Bludworth* v. *Lake*, 33 Cal. 258 *et seq.*, that the remedy thus provided was not exclusive. By the terms of this statute, a notice was given to all adverse claimants to appear and contest the claims of the applicant, and upon a failure to appear the patent was granted. When an adverse claim was put in the papers were transmitted to the district court for a judicial determination of the rights of the respective parties. The case last referred to clearly presents the question. No fraud was charged,

and no excuse for a failure to interpose an adverse claim was offered. Yet the court holds that notwithstanding this remedy is afforded to defeat the application and prevent the issuance of the patent, the adverse claimant need not avail himself of it, but may come into the courts on his own motion, after the issuance of the patent, and upon a proper showing convert the patentee into a trustee for his benefit. It is subjected solely to the disadvantages arising from a patent by which his adversary is clothed with the legal title and is compelled to resort to a court of equity to divest him of it. The provision that upon a failure to interpose an adverse claim within the time prescribed by the Mineral Act it shall be deemed waived is not more comprehensive in its scope than the terms of the California statute "requiring the patent in such case to issue to the applicant." The patent imports absolute verity in a court of law, and in that court implies a right of entry in the patentee, provided the land at the time was subject to location. See *Megerle* v. *Ashe*, 33 Cal. 74 *et seq.*

Whilst many of the questions presented are old and familiar in their application, others growing out of the construction to be given this mineral act, so far as they are involved in this controversy, are novel and afford a wide field for differences of opinion. It is not, therefore, claimed that we are entirely free from doubt in some of the deductions we have made; but by parity of reasoning from such authorities as we have been able to find bearing upon the subject, believe they are in the main correct. We think, however, it can safely be said that when the government parts with its title, and the question has become one of private rights between individuals, that the courts in all such cases determine those rights in accordance with the well-established principles of equity. That whenever the transactions of a party are so tainted with unfairness as to render it unconscionable to permit him to retain the benefits of an advantage he has thus acquired, he will be treated as a trustee to get at him, and compelled by the court to yield up the last vestige of his ill-gotten gains.

The unparalleled rapidity with which the patent was carried through the land office at Washington, *out of its regular order*,

was in direct violation. of the regulations of that department. These regulations have the sanction of law, and should be considered in connection with the rights of appellants in this case. The very object of the provisions of the statute, allowing " objections from third parties," was to afford an opportunity of showing that the " appellant had not complied with the act." It was contemplated that such parties should have the full period of time from the completion of the publication of notice to the issuance of the patent in its regular order in which to interpose these objections and make the necessary proofs. The application of Agno is in no respect made an exception under the law, and the merits of the controversy should not now be ignored by the courts on account of favoritism by, or imposition upon, the officers of the department. It is not an exceptional case, and is not, therefore, entitled to the benefit of an exception. But for this the proofs in support of the allegations of the answer would long since have been pending before that department, and in all probability the application denied and the patent refused. And it is this patent that has clothed a tissue of falsehoods with the habiliments of verity in a court of law, which are now sought to be dismantled in a court of chancery. We submit that the facts in this case are not only wanting in all those qualities of fair dealing that ordinarily characterize transactions between man and man, but that every act since the inauguration of the Star of the West and Nelly Grant claims are but links in a chain of testimony leading unequivocally to but one conclusion — that the claim of respondents had its inception in a deep laid scheme of fraud, and that the patent sought to be made available in this action, is the offspring of a series of concerted plans, born in corruption and the product of skillful practitioners in that line of business.

CHUMASERO & CHADWICK, and SANDERS & CULLEN, for respondents.

1. As to the first point made in appellants' brief, viz.: That the title of plaintiffs is but an equitable one, and will not, therefore, support an action of ejectment, respondents contend it is not well taken. The complaint was filed on the 12th day of May, 1876,

and alleges that plaintiffs were seized in fee of the demanded premises on the 3d day of March, A. D. 1876, which was the date of the issuance of the patent. The date of the application for patent nowhere appears in the transcript, but it must have been prior to the making of the deed to plaintiffs by Agno, and prior to the entry of defendants into possession of the premises on the 2d of September, 1875, for, as is averred in the eighth subdivision of defendant's answer, Agno immediately after their entry tore down the notices, plat, etc., posted upon the claim. While we do not concede the position of appellants to be correct in any particular, we say that if it were true that Agno only conveyed by his deed an equitable title, this would not avail the appellant as a defense in this case for the reason that a patent has since issued for the premises, and it is a well-established doctrine that the patent when issued will relate back to the date of the application for the same. *Shepley* v. *Cowan*, 1 Otto, 330; *Leese* v. *Clark*, 18 Cal. 570, 571; *Moore* v. *Wilkinson*, 13 id. 478; *Yount* v. *Howell*, 14 id. 465; *Stark* v. *Barrett*, 15 id. 362; *Ely* v. *Frisbie*, 17 id. 250; *Klein* v. *Augenbright*, 26 Iowa, 493; *Stark* v. *Starrs*, 6 Wall. 402.

2. The new matter set up in defendant's answer is insufficient as a defense, and is in no sense a cross-complaint which would entitle them to the relief prayed for. The cross-complaint contemplated by section 56 of the Practice Act (Cod. Sts., p. 38), must set up a cause of action against the plaintiffs as a cause of action and not as a defense. *Doyle* v. *Franklin*, 40 Cal. 110; *Jones* v. *Jones*, 38 id. 585; *Blum* v. *Robertson*, 24 id. 141.

Nor will the pleader be heard in this court to assert that it is a cross-complaint when he has pleaded it merely by way of defense. *McAbee* v. *Randall*, 41 Cal. 137.

A cross-complaint must within itself state facts sufficient to constitute a cause of action, and cannot be helped out by the averments of any other pleading in the action. *Collins* v. *Bartlett*, 44 Cal. 381; *Kreichbaum* v. *Melton*, 49 id. 55.

3. Proceeding now to the consideration of the new matter pleaded as a *defense*, we say that it was insufficient, and that the court below committed no error in striking it from the answer.

A fair construction of sections 2325 and 2326 of the Revised Statutes, and of the instructions of the commissioner thereunder, which are as much a portion of the act as if they were contained in the act itself (see § 2478, Rev. Sts.), makes it the duty of any one having an adverse claim to the applicant for a patent to file the same in the local land office within the period of publication and to commence suit thereon within thirty days and a failure so to do, is declared to be a waiver of such adverse claim. The act makes no exceptions, and whatever may be the nature of the adverse claim, if one exists, it is to be so made. If, as appellants contend, the muniment of their title was a judgment of a court of competent jurisdiction, it only rendered it so much easier for them to establish their claim. Any answer which failed to show that appellants had availed themselves of this right, unless they were prevented from so doing by positive fraud on the part of the applicants, is fatally defective. The maxim of the law : " *Vigilantibus et non dormientibus jura subveniunt,*" applies with peculiar force to a case of this kind, where the statute has provided a remedy and provided adequate means for its protection and enforcement. *Dudley* v. *Mayhew*, 3 N. Y. 15 ; *Cofield* v. *McClellan*, 1 Col. 373 ; *Territory* v. *Ross Deegan, ante,* 82 ; *Pimental* v. *City of San Francisco,* 21 Cal. 354 ; *Peabody* v. *Phelps,* 9 id. 218 ; *United States* v. *Flint et al.,* Alta California, Sept. 11, 1876 ; *Shepley* v. *Cowan,* 1 Otto, 340.

The new matter set up in defendant's answer may be classified generally as consisting of two kinds or descriptions :

1. Matters tending to show that the grantor of respondents committed frauds upon the land office, which would vitiate his patent and,

2. Matters which appellants contend estop respondents from asserting their title.

As to those matters which, if true, would justify the government in recalling and cancelling the patent, they are clearly, under the authorities not sufficient to constitute a defense in this action. Any proceedings to annul the patent for these causes must be commenced by the government in its own name, through the attorney-general. *Mowry* v. *Whitney,* 14 Wall. 434 ; *Jackson* v. *Lawton,* 10 Johns. 24 ; *Gullipot* v. *Manlove,* 1 Scam. 156–161.

It is conclusive evidence that all necessary preliminary steps have been taken and proceedings must be instituted to directly attack the patent. *People* v. *Mansur*, 5 Denio, 397, 398 ; *Boardman* v. *Reed et al.*, 6 Pet. 328 ; *Houseman* v. *Hart*, 12 Johns. 77 ; *Smith* v. *March*, 6 Cow. 281 ; *People* v. *Livingston*, 8 Barb. 253 ; *Bradley* v. *Began*, 36 Barb. 533 ; *Minter* v. *Crommelin*, 18 How. 88 ; 9 Cranch, 98 ; 19 How. 332 ; *Wilcox* v. *Jackson*, 13 Pet. 511 ; *Gaines* v. *Nicholson*, 9 How. (U. S.) 364.

As to the scope and effects of patents, see *Moore* v. *Wilkinson*, 13 Cal. 486 ; *Yount* v. *Howell*, 14 id. 469 ; *Ely* v. *Frisbie*, 17 id. 250 ; *Doll* v. *Meador*, 16 id. 324–325 *et seq. ; White* v. *Cannon*, 6 Wall. 448 ; see Mining Act, §§ 2325–2326.

Here, again, the appellants have been guilty of *laches.* If the proofs made by Agno in the land office were false, and he was attempting to procure a patent by false suggestion, this was a matter upon which appellants would have been heard in the land office, even after the expiration of the period of publication, and would have effectually prevented the issuance of the patent. See last sentence of section 2325 Rev. Sts. U. S.

2. As to the estoppels attempted to be pleaded in appellants' answer, they are wholly insufficient and not available to appellant as a defense in whatever light they may be viewed. The first estoppel pleaded is that by reason of the suit of *Frohner & Barta* v. *Rodgers et al.*, Agno was estopped from denying the right of Frohner & Barta to the Cannon and Cannon Extension lodes. Even admitting this to be so as between the Cannon lode and the Star of the West lode, it would be no bar or estoppel to the assertion of an after-acquired title. *Valentine* v. *Mahoney*, 37 Cal. 389 ; *Mann* v. *Rodgers*, 35 id. 316 ; *Montgomery* v. *Whiting*, 40 id. 294 ; *Mahoney* v. *Middleton*, 41 id. 41 ; Opinion of KNOWLES, J., on motion to dissolve injunction ; *Gluckauf* v. *Reed*, 22 Cal. 468 ; *Cromwell* v. *County of Sac.*, 4 Otto, 351 ; *Russell* v. *Place*, id. 606.

3. Ejectment is merely a possessory action and determines no rights but those of *possession at the time*, and it matters not who has or claims to have the title. *Dutton* v. *Warschauer*, 21 Cal.

609; *Fogarty* v. *Sparks*, 22 id. 148; *Owen* v. *Fowler*, 24 id. 192; *Hawkins* v. *Reichert*, 28 id. 534; *Dimick* v. *Deringer*, 32 id. 488.

4. The second estoppel pleaded is the alleged tearing down of the notices and plat, posted upon the ground, and the declarations of Agno with reference thereto, whereby they (appellants), were induced to do work upon the premises, over and above what was necessary for the representation of the same to the amount of $2,500 or $3,000. This is not sufficient to constitute an estoppel in any sense of the word. Appellants had no right to rely upon the declarations of one who was openly hostile to them. He occupied no fiduciary position toward them which would entitle them to credit his statements. They were not in a position where they were compelled to rely upon these statements, and might by application at the land office have readily ascertained whether they were true or false. They knew the premises had been surveyed, that application had been made, and that notice of the same was being published, or had been published, or if they did not have knowledge of this fact of publication, there is no allegation that they were prevented from knowing it through any fraud of Agno. *Biddle Boggs* v. *Merced, etc., Min'g Co.*, 14 Cal. 363, 364, 366, 368, 370, 372; *Ferris* v. *Coover*, 10 id. 589; *Fletcher* v. *Holmes*, 25 Ired. 458; Story's Eq. Jur., § 388. Opinion of KNOWLES, J., on motion to dissolve injunction. *Green* v. *Prettyman*, 17 Cal. 401.

5. These representations, if made, related only to the present intention or purpose of Agno, and being in its nature uncertain and liable to change, appellants had no right to rely upon it. Big. on Estop. 483.

6. The new matter set up in appellant's answer is also insufficient in that it does not show that they are in a position where they could themselves demand a patent from the United States, and unless appellants are in this position, they are certainly in no condition to demand a conveyance of our title, whatever may be their equities. See section 2326, Rev. Sts. (Mining Law): *Lee* v. *Somers*, 2 Oregon, 260. Opinion of KNOWLES, J. on motion to dissolve injunction in this case. *Dodge* v. *Perez*, 2 Sawyer, 645.

7. The new matter set up in appellant's answer, if for no other reason, should have been stricken out, because it is conflicting, contradictory and evasive. It avers in one breath that the entry was made before they had knowledge that the property had been relocated and its name changed; and in the next, that immediately after they had entered, on the 2d of September Agno came to them with the plat and notices in his hands, and made the declarations charged as an estoppel.

That they were prevented from making survey and adverse claim, by reason of the inclemency of the weather, and this when they say they did not know such survey and claim were necessary. The inclemency of the weather in the months of August and September and October, 1875, is something contradicted by the facts of which the court below was entitled to take judicial notice And so throughout the entire answer they allege an estoppel in pais and long afterward ignorance of facts which, if the estoppel pleaded were true, they must of necessity have been conversant with. We need not cite authorities to the proposition that a pleading must be consistent, the one part with the other.

8. There was no error in striking off the amendment filed by appellants to their answer, for the reason that it set up no new fact, but the same facts which had been previously pleaded, with a little change in the phraseology. It did not obviate the defects in the original answer in any respect; and hence was properly stricken off. *Snyder* v. *White*, How. Pr. 321.

Besides, the allowing or disallowing an amendment is a matter of discretion in the court below, and is not a proper matter for revision in this court unless there has been a gross abuse of such discretion. *Stearns* v. *Martin*, 4 Cal. 229; *Polk* v. *Coffin*, 9 id. 58.

The system of disposing of mineral lands inaugurated by the act of July 26, 1866, and the amendments thereto, is *sui generis* and is to be interpreted with reference to the rights created; the method of their acquirement, the settlement of hostile claims, nor are the authorities quoted which grow out of the other public land laws applicable.

By the general land laws the department paid no attention to

the decisions of courts as to the right to occupy agricultural lands, nor did, under that system, any court have jurisdiction to determine conflicting rights. These could be settled after the patent in those cases, and hence that series of decisions growing out of such entries are almost wholly inapplicable to the mineral land system and are misleading.

The right to the mineral lands, the persons to whom and the circumstances under which such lands were given, the method of their acquirement and the protection accorded to such right, were all defined and particularly described by these acts; and all litigation as to inchoate rights were required to be settled prior to the issuance of the patent which was the final act in the *drama* of title. Where rights are so given, and remedies for their violation so prescribed, no other remedy is left open for a person seeking to acquire the right. See *Dudley* v. *Mayhew, supra ; Almy* v. *Harris*, 5 Johns. R. 175 ; *McKeon* v. *Coherty*, 3 Wend. 494 ; *Stafford* v. *Ingersoll*, 3 Hill, 38.

Here the statute which gave the appellants rights, furnished the remedy which was adequate, and prescribed that unless it was in the manner prescribed invoked, the respondents were entitled to the patent. A failure to do the things prescribed it was provided should operate as a waiver of the adverse claim.

Now Agno professed to be the owner of this lode and entitled to a patent, and according to all these allegations the appellant had an adverse claim which was good, but which they waived. See § 2326, Rev. Sts. U. S.

The appellants are therefore asserting a stale claim which they have waived, and they are in this court instead of in the land office to have their waiver annulled, but no authority is given to this court to set aside the effects of such a waiver.

Their reason for having this waiver set aside is that they neglected to do that which the law which gave them their rights required they should do, and the court is asked to do that which in another manner they might have insisted on doing themselves.

KNOWLES, J. The first proposition I shall consider in this case

is: Was the demurrer to the new matter set forth in the defendant's answer properly sustained? The demurrer is in effect, that the new matter set forth in the answer, in no light in which it can be properly viewed, presents a proper defense to plaintiff's complaint. The first defense is, that of an estoppel by judgment record. To sustain this the answer alleges that the defendants, Frohner and Barta, located and become the owners of, by location, certain mining claims, known and described as the Cannon and the Cannon Extension claims; that John Rogers and others located the same ground as " the Star of the West Lode," and went into the possession of the same; that to recover the possession thereof, defendants, Frohner and Barta, brought an action, which was decided in their favor, and judgment of possession was awarded them under which the same was restored; that pending such litigation Agno, the grantor of plaintiffs, purchased the interest of the said Rogers and others in the said " Star of the West " location and went into possession of the said property, and undertook to defend said suit, and that he was therefore a privy in said action, and bound by the judgment therein. I agree to the proposition that the said Agno, under this state of facts, is estopped from setting up any claim or interest he may have acquired in " the Star of the West " location, from the said Rogers and others.

But it does not appear that the title in dispute in the case is that derived from " the Star of the West" location. In Big. on Estop. 523, I find this: " But in pleading or replying a judgment as an estoppel to an action or allegation more minuteness must be observed. It must now be made to appear that precisely the same point was in issue at the former trial, as that now in question, or there can be no estoppel."

The allegations setting forth the estoppel in this case did not show that the plaintiffs are claiming any thing by virtue of " the Star of the West" location. The trial of this cause shows that " the Star of the West " location was not in issue; that the plaintiffs in the case claimed nothing by virtue of the same, but claimed title to the same by virtue of a patent from the United States. Hence the judgment in the case pleaded could not have

worked an estoppel to the giving the same in evidence, and would have made no difference in this action. It is true that in the case of Barta and Frohner against Rogers and others, the right to the possession was determined, but that right in that case depended upon a different state of facts from that presented in this case. A party who has been adjudged to deliver possession of land to another claimant is not estopped from purchasing, subsequent to the action in which the right to such possession was determined, an outstanding title, and asserting again his right to the possession of the same. *Valentine* v. *Mahoney*, 37 Cal. 389; *Mann* v. *Rogers*, 35 id. 316; *Montgomery* v. *Whiting*, 40 id. 294.

There is nothing worthy of much discussion in the point that the subsequently-acquired titles of Agno should inure to the benefit of Frohner and Barta. They were not the purchasers of any title from Agno or Rogers *et al.* The doctrine that asserts that the subsequently-acquired title of one man inures to the benefit of another, applies only where the latter is a purchaser of a title from the former. The said judgment in favor of Barta and Frohner did not make them the purchasers of any title from Rogers *et al.*, or from Agno.

Each defense should be complete in itself. If a pleader does not wish to restate matters already pleaded in one defense, he should refer to such matters by appropriate words, and make them a part of any defense where he desires them to appear. Moak's Van San. Pl. 606; *White* v. *Cox*, 46 Cal. 169.

In considering the remaining issues presented by the answer, I find myself much at a loss. None of these defenses are stated separately, nor is either complete without referring to matters evidently averred and intended for another defense. The answer evidently unites several defenses, and a cross-complaint in what I think must be treated as one count. The defenses and cross-bill are not separately stated, but there was no demurrer to the answer for this reason. The defendants urge that the title of the plaintiffs had its inception in fraud of their rights; that Agno's location of the same was made while he was in possession thereof under "the Star of the West" location. This is true under the allegations in the answer, but the answer shows that this location

was made subsequent to the trial of the case between Barta and Frohner and Rogers *et al.* His rights under this location could not have been determined in that case. A party is precluded and estopped by any title he put in issue in a litigation, or which he might have put in issue, and by no other. *Mann* v. *Rogers,* 35 Cal. 316. The acquiring of mining ground by location is procuring such right by purchase.

Wash. on Real Prop., vol. 3, p. 4, says : " In one thing all writers agree, and that is in considering that there are two modes only, regarded as classes, of acquiring a title to land, namely : descent and purchase." Certainly no one would contend that when a person locates mining ground, he acquires a right to the same by descent. He must acquire it then by purchase. The fact that Agno made a location of this mining claim, while he was in possession under " the Star of the West " location, puts him in no different condition from what he would have been, had he purchased an outstanding title otherwise than by location at that time. I have shown in the cases of *Valentine* v. *Mahoney, Mann* v. *Rogers* and *Montgomery* v. *Whiting,* cited above, that he may do this. And how it would be fraud to do so I cannot see. It is alleged that Agno knew that defendants had the title to said ground, and that the same was not open to location. It is not necessary when a man buys in an outstanding title, for him to know that it is a valid title. And if he should not know that it was a valid title, or should know that it was not, I do not see how he can be charged with fraud. If his title was not a valid one, he would acquire nothing by it, and the person in possession of the property thus acquired would have a legal defense against the same. I have been unable to find any authority for the assertion that the person acquiring an outstanding title under such circumstances would be regarded as having committed a fraud even if he knew he had not procured the valid title by such purchase. The fraud, alleged to have been practiced by Agno upon the defendants in preventing them from contesting his application for a patent, will be considered under the plea of estoppel *in pais.* Taking the whole answer together, can there be enough extracted from it to show such an estoppel? The gist of the mat-

ters which can be treated as such a defense, are the alleged false and fraudulent representations of Agno. For Agno and those in privy with him to be estopped by these it must appear: First, that there were representations concerning material facts; Second, the representations must have been made with the knowledge of the facts; Third, the party to whom they were made must have been ignorant of the truth of the matter; Fourth, they must have been made with the intention that they should be acted upon; Fifth, they must have been acted upon. Big. on Fraud, 438; Kerr on Fraud and Mistakes, 93; *Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 279.

There is no allegation in the answer that the representations of Agno were made with the intent that the defendants should act upon the same. To have set up a complete defense of estoppel *in pais*, the answer should have contained such an allegation. Moak's Van Sant. Pl. 336.

There are certain allegations of fraud in the answer which tend to establish a fraud upon the United States by Agno in procuring a patent to the ground in dispute. For this only the United States can attack the said patent. *Mowrey* v. *Whitney*, 14 Wall. 434; Wash. on Real Prop., Vol. 3, p. 180; *Field* v. *Seabury, et al.*, 19 How. (U. S.) 323. From the brief of appellants it appears that this answer should also be treated as a cross-complaint. A cross-complaint should certainly be set forth separate and distinct from those portions of the answer which are intended for defenses, and should be complete in itself. In order to find anything approaching a cross-complaint in this case portions of the answer must be referred to which were evidently intended for such defenses, as estoppel of record and estoppel *in pais*.

There is nothing in that portion of the answer intended for a cross-complaint which sets up title in the defendants, and I will have to refer to these allegations setting up an estoppel by record to find such allegations. But as the point was not distinctly raised by the demurrer, I will consider the whole answer and determine whether or not sufficient is alleged therein to entitle the defendants to the relief asked. The relief asked is a declaration that defendants and not Agno were entitled to a patent from the

United States, to the ground in dispute, and hence Agno occu-
pied but the place of the United States and was only a trustee of
the legal title for the benefit of these defendants, and the plain-
tiffs having notice of defendant's equities are also but similar
trustees.    I am aware of and fully recognize the legal proposi-
tion that where one person has procured a patent to any portion
of the public domain from the general government, for which
another party is entitled to a patent, that the former may be de-
clared a trustee for the latter and adjudged to convey to him the
legal title.    But this latter person must show that in equity he
is entitled to this conveyance.    Generally speaking he would not
be entitled to this conveyance unless he was entitled to one from
the United States.    The location of a parcel of mining ground
in accordance with the United States law and the local laws upon
the subject, does not entitle a person to a patent from the United
States.    He has the right to apply for a patent, and he only.    It
is a qualification for applying for a patent, similar to the right of
citizenship, or the declaration of intention to become a citizen.
Before a person, who has located a mining claim in accordance
with law, would be entitled to a patent from the United States,
he must make an application therefor under oath, and file there-
with in the proper office of the land register, a plat and field
notes of the claim, made by or under the direction of the United
States surveyor general.    He shall post a copy of such plat
together with a notice of such application in a conspicu-
ous place on the claim, and shall file an affidavit of two
persons that such notice has been duly posted.    Then the
register of the land office shall publish the fact for at least sixty
days, that such application has been made.    Then the applicant
shall file with the register a certificate of the United States Sur-
veyor General that five hundred dollars worth of labor has been
expended, or improvements of that value put upon the claim
by him or his grantors.    Then there must be an affidavit that
the plat or notices have been posted up on the claim during the
sixty days of the publication of the notice.    Then if no adverse
claim is made to the ground, the applicant is entitled to a patent

thereto upon payment of five dollars per acre therefor. U. S. Rev. Sts., § 2325.

It may be that where the title has passed out of the United States, a person might not be required to do all of these things, but certainly he ought to do every one of them that could and which would be of any avail. He ought to have a survey made of the same under the direction of the United States surveyor general for Montana.

It is true the cross-complaint shows that there was a survey made of the property by a deputy United States mineral surveyor, but it does not show that the survey was made under the direction of the United States surveyor general. There was no certificate procured from the United States surveyor general of Montana, showing that defendants had performed five hundred dollars worth of labor upon said claim.

There was no tender to the plaintiffs or Agno, of five dollars per acre for this ground. And there is nothing to show that the defendants should be legally excused from doing these matters. In fact there is nothing in the cross-complaint which would tend to show that defendants were entitled to a patent to this ground save the mere location of the same. The cross-complaint does not show an equitable title for a patent in defendants. Do the defendants set up in the answer a legal title in themselves? I suppose what the defendants would claim as allegations showing legal title in themselves, is the clause of the answer, numbered *eleven*, which commences thus: "Defendants further charge and allege that they were and are entitled to the exclusive possession and enjoyment of, etc." The allegation that a party is entitled to the possession of real property is a legal conclusion and not the allegation of a fact. *Payne and Dewey* v. *Treadwell*, 16 Cal. 221.

There might be matter enough set up in the allegations intended for a defense of estoppel by judgment record to amount to a plea of a legal title in defendants. If there were no objection to considering this, still, under the demurrer in this case, should this be treated as new matter constituting a defense?

Justice RHODES in the case of *Marshall* v. *Shafter*, 32 Cal.

177, holds this language: "It is proper at this point, however, to say that it is settled beyond all controversy in this State that the defendant may under the general denial give in evidence title in himself, and it follows that the allegation of such title in the answer does not constitute new matter, and therefore the allegations of title in the defendant do not present a new issue." In this case the denials of the defendants in their answer put in issue, the allegations of title in the complaint. Under this issue the defendants could have proven any thing that would have shown that plaintiffs had no title or were not entitled to the possession of said property. For this purpose they could have shown title in themselves or the right to possession in themselves. I do not controvert the proposition that when a person possessing the proper qualifications as to citizenship, locates, according to law, a mine, he receives by operation of law a grant to a mining easement to the same, and this grant gives him the exclusive right to the possession and enjoyment of such property for mining purposes. And I am of the opinion that this grant is what may be termed a legal right, and can be introduced in evidence in an action to try the right to the possession of a mining claim, although it is opposed by a patent from the general government. A patent is nothing more than a public grant evidenced by a deed. The title to this mining easement rests upon a grant, as I have said, and is evidenced by the facts of location and the law of congress. Whoever is prior in time where there are two grants, is prior in right. If the defendants, then, located the claim in dispute, according to law, before the grantor of plaintiffs located the same, they could have introduced the title thus acquired, in evidence in this case, under their general denial, and it would have prevailed, in determining the right to the possession against the patent of the plaintiffs. There is nothing to show, however, in the record that they ever offered in evidence any such title on the trial. The fact that defendants made allegations in their answer showing title in themselves according to the foregoing opinion in the case of *Marshall* v. *Shafter* will avail them nothing. According to that such allegations for the purpose of showing a legal title in them-

selves were not new matter constituting a defense. It was only surplusage or irrelevant matter when viewed in that light. The demurrer admits only so much of the new matter as goes to make a proper defense. A demurrer does not admit surplusage or immaterial matter. Moak's Van Santv. Pl. 783. If the answer then could be considered as setting up a legal title as new matter in defense, so far it must be regarded as immaterial and surplusage.

I now come to the question as to whether or not the plaintiffs were possessed of a legal title or only an equitable one at the time of the commencement of this action. There is no motion for a new trial; no record of the evidence introduced on the trial in this case. Hence according to the well-established rules in judicial proceedings, we cannot determine whether the findings of the court below were correct or not.

The cause was tried before the court without a jury, and the court finds that the plaintiffs were the owners of the premises in dispute in fee simple. We cannot go behind this finding.

On the trial it appears that there were exceptions taken to the introduction in evidence of a patent to Agno, from the United States of the ground in dispute, dated March 3, A. D. 1876, and a deed from Agno, to these plaintiffs, conveying the same, dated November 23, A. D. 1875. When this patent was delivered to Agno does not appear. There is no evidence in the record upon this point. This court cannot then presume that it was not delivered to Agno before the commencement of this suit. If these deeds do not have a tendency to show a legal title in the plaintiffs, then they were improperly admitted in evidence. If they had that tendency, then they were properly received. The granting part of the deed from Agno to the plaintiffs is as follows: "The said party of the first part for and in consideration of the sum of ten thousand dollars lawful money of the United States of America, to him in hand paid by the parties of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold, remised, released and conveyed, and by these presents does grant, bargain, sell, remise, release and convey unto the said parties of the second part and unto

their heirs and assigns forever, the following described tract or parcel of mining ground."

The covenants of warranty are as follows: "And the said party of the first part, and his heirs and assigns, hereby promise and covenant the title, and peace and possession of said property to warrant and defend against the lawful claims of all persons whomsoever." Taking these portions of that deed, and there is no doubt but that it purports to convey to the plaintiffs a fee simple absolute title to the mining ground in dispute. There could be no doubt that this is the scope of that deed were it not for another recital in the deed, namely: " This conveyance is intended and does convey all the title the party of the first part now has, as well as all title he may hereafter acquire by a patent from the United States, application having been made therefor." This recital, however, does not change the character of this conveyance. It does not place any limitation upon the title it conveys. In fact it only declares what in law would be the effect of such a deed under our statute. I do not deny that as far as the title the said Agno had to a patent from the United States, he could have had only an equitable title to the same, and so far as that patent title was concerned the deed only conveyed his equitable title to that patent title. But that is not the question here presented, namely :· What title this deed in fact did convey, but what did it purport to convey ? I answer that this deed must be classed as one that purports to convey the fee simple absolute title to this mining ground, for it purports to convey a title without any restrictions or conditions. It purports to convey such an estate as would pass to one's heirs at common law, and not to his administrator.

" A fee simple title is one that excludes all qualification or restriction as to the persons who may inherit it as heirs." 1 Wash. on Real Prop., 65–66. There is no qualification or restriction as to heirs in this deed. Purporting then to convey a fee simple absolute title to this ground in dispute, what was its effect upon the patent title that Agno subsequently acquired?

Our own statute (see Cod. Sts. 401, § 32) upon conveyance of realty is as follows : "If any person convey any real estate by

conveyance *purporting* to *convey* the same in fee simple absolute,
and shall not at the time of such conveyance have the legal estate
in such real estate, but shall afterward acquire the same, the legal
estate subsequently acquired shall immediately pass to the grantee,
and such conveyance shall be valid as if such legal estate had
been in the grantor at the time of the conveyance."

The recital in the deed of Agno only declared what was the
effect of the deed under this statute, as soon as Agno received the
patent from the general government. As soon as Agno received
the patent to this ground from the United States the legal title he
so acquired, by virtue of his deed to them, inured to plaintiffs'
benefit. I am not obliged, however, to rest my conclusion that
the patent title of Agno, acquired by his patent, inured to the
benefit of the plaintiffs, upon the section of our statute above
quoted. In the case of " *The Lessees of Harmer's Heirs* v.
*George Morris and David Gwynne,* 1 McLean's C. C. R. 44, one
Symmes executed a deed to Harmer to certain lots in what is now
the city of Cincinnati, in the year 1791. In the year 1794 Symmes
received a patent from the United States to these lots with other
ground. McLEAN, J., says as to the effect of this subsequent title
acquired by Symmes : " A deed having been given by Symmes to
Harmer for these lots in 1791, when the patent was issued to Sym-
mes for the same land in 1794, the deed of 1791 took immediate
effect, and vested Harmer with the legal title." This case was
affirmed in 7 Pet. 554 ; 10 Curtis' U. S. Sup. Ct. R. 558. STORY, J.,
upon this point, used this language in delivering the opinion of the
court : " That the deed of Symmes to Harmer in 1791 passed
a legal title to Harmer which became consummated in the latter
when Symmes obtained his patent from the United States in
1794 is not controverted." Under many decisions according to
the doctrine in estoppel, the patent title of Agno would inure to
the benefit of the plaintiffs. Agno's deed to them being a war-
rantee deed, it follows from this view that the introduction of
these deeds not only had a tendency to establish a legal title in
the plaintiffs, but that they did establish such title, there being
nothing to show that Agno did not receive this patent before the
commencement of this action. It was signed before that, and
may have been and probably was delivered before that.

Whatever may be my views as to the abstract question of right in this case, and however much my disposition might impel me to do otherwise, I am satisfied that well-established principles of law force me to the conclusion that the judgment in this case must be affirmed.

It is ordered that the judgment of the court below be affirmed with costs.

*Judgment affirmed.*

WADE, C. J., dissenting. It is due to the importance of this case, and in view of the fact that the answer has been held insufficient, to set forth the allegations of the same more fully than has been done. The action was instituted by plaintiffs to recover possession of the Nellie Grant Quartz lode claim and for a perpetual injunction enjoining the defendants from working the same. The answer in substance alleges that the defendants on the 9th day of June, 1872, located the Cannon and Cannon Extension lodes upon the unoccupied and unappropriated lands of the United States, and that they acquired the right to the exclusive possession and enjoyment of such lodes under and in pursuance of the act of Congress of May 10, 1872. That while they were so seized and possessed of such lode claims and while the same were no longer open to exploration and occupancy by any other persons than themselves, one John Rogers in company with John G. Keith, William Lennox and A. J. Arnold wrongfully and unlawfully entered upon and ejected the defendants therefrom, and while so in possession relocated the same as the Star of the West lode. The defendants then instituted an action in ejectment to recover possession of the property. During the pendency of this action one Arthur B. Agno purchased of the defendants therein, who were so wrongfully in possession thereof, the Star of the West lode, and went into possession and agreed to defend the action. The cause was tried and resulted in favor of the plaintiffs (defendants herein) who were adjudged entitled to the possession of the property in question by virtue of the Cannon and Cannon Extension locations as against the defendants therein (Rogers & Company) who claimed under the Star of the West location.

Thereafter by virtue of a writ of restitution the defendants in that action were dispossessed and these defendants were restored to the possession of the Cannon and Cannon Extension lodes. Thereupon an estoppel by virtue of this judgment is alleged against Rogers & Company, their grantees.

It further appears that while Agno was so wrongfully and tortiously in possession of the Star of the West lode, and during the pendency of the action in ejectment and an appeal and *supersedeas* therein, he, conspiring with Rogers & Company to defraud the defendants and to avoid the consequences of such litigation and judgment, changed the name of the property and relocated the same as the Nellie Grant lode, well knowing that the defendants at the time of such relocation were entitled to the exclusive possession and occupancy of the property and that the same was not open to exploration and appropriation, being at the time owned by the defendants. Thereafter Agno fraudulently procured Meyendorf, one of the plaintiffs, a deputy mineral surveyor, to survey the Nellie Grant lode for the purpose of procuring a patent thereto, and the plaintiffs, with the full knowledge of all the rights and equities of the defendants, purchased the Nellie Grant lode and received a deed therefor. To aid this fraudulent design to procure a patent and while the property was so in litigation and in the possession of Agno, and while the defendants were at the city of Helena, eighteen miles distant, attending to such litigation, the plat and notices were placed upon the property, and immediately and within five days thereafter and long before the defendants knew that the name of the property had been changed and the same relocated, it became impossible, by reason of deep snows in the mountains and extreme cold and stormy weather, to obtain access to the property and make survey of the same, if an adverse claim became necessary.

Agno represented to the defendants that the Nellie Grant lode did not embrace any of the Cannon or Cannon Extension lodes, and the survey of the Nellie Grant lode, as shown by the field notes and official plats on file in the surveyor-general's office do not show the *locus* of such claim to interfere with or to embrace any of the Cannon or Cannon Extension lodes, all of

which records, survey plats and field notes were so done and executed for the purpose of deceiving and defrauding the defendants, who were at the time ignorant of such design and relied upon such representations.

While Agno was thus wrongfully and tortiously in possession of the property and wrongfully excluding the defendants therefrom by virtue of false affidavits concerning his occupancy and possession of the property and his compliance with the laws of congress and the rules thereunder, he placed himself in a position to apply for a patent to the property. The defendants, after discovering the *locus* of the Agno location, filed their *caveat* and certified copy of the judgment-roll in the ejectment case with the proper officer who erroneously disregarded the same.

It appears that the plaintiffs procured Agno to do and perform the fraudulent act charged against him for the purpose of fraudulently procuring a patent for the property when the same belonged to the defendants. After the defendants had been placed in possession of the property by virtue of the writ of restitution Agno went upon the premises and tore down his notices and plat and gave them to the defendants, and willfully and with the intent to deceive and injure the defendants said to them that he had abandoned his application for a patent and that in the future he would lay no claim to the property, and that he had done with interfering with the property, and that he had no right to do what he had done in attempting to defeat the judgment in the ejectment action. And relying upon these representations and the good faith of the same the defendants performed a large amount of work upon the property that they otherwise would not have done; that he also fraudulently and falsely represented that his survey and claim did not embrace the lode claims of the defendants, and that he would not and should not claim any part of the same; that these representations were made just before the time expired for the interposition of an adverse claim; that but for such representations the defendants would have ascertained the conflict as best they could (the same being then unknown to them), and interposed their adverse claim and maintained their title and obtained a patent to the

property ; that such representations were false and were fraud-
ulently made to prevent the defendants interposing their claim,
thereby to enable the plaintiffs to procure their patent ; that the
plaintiffs had full knowledge of the facts at the time they
received the conveyance from Agno and are estopped from
asserting the title so fraudulently obtained, which title is a cloud
upon the defendants' title and is being injuriously used against
them by plaintiffs by invoking the equitable interposition of the
court to grant the injunction herein.

All these facts and allegations of the answer material to the
issue were by the demurrer thereto admitted and the demurrer
sustained, and this decision of the court below is by the majority
opinion herein affirmed.

1. In my judgment this opinion assumes as a fact the very
question to be tried in the case ; it declares : " But it does not
appear that the title in dispute in this case is that derived from
the Star of the West location." This oracular assertion assumes
as a fact the important question that the answer seeks to present
for determination, and the decision seems to be based upon this
assumption and the one following it, that Agno held the Nellie
Grant location by a title subsequent to the judgment in the eject-
ment case. The question is do the allegations of the answer
warrant these conclusions ? Does not the answer conclusively
show that the title under which the plaintiffs' claim was derived
from the Star of the West location, and was not the Star of the
West title concluded by the judgment ? Was the Nellie Grant
title a new and subsequently acquired title ? To answer these
questions it becomes necessary, in the first place, to determine
what effect is to be given to the judgment in the ejectment case.
It is conceded that the patent to the plaintiffs' grantor, Agno,
carried with it the legal title to the property, but the defendants
seek to show by their answer that they are entitled to the bene-
ficial estate therein and ask the interposition of the equitable
jurisdiction of the court to protect them in their possession and
award affirmative relief, should it appear proper to do so. For
this purpose they first plead the ejectment judgment. That
judgment was good as between the parties as to all the probative

facts put in issue. It determined every thing necessary to a recovery on the part of the plaintiffs in that action who are the defendants herein. It established their right to the identical property in controversy at the time. It conseqently devolved upon the respondents, the plaintiffs, to show a new title. But in making a new location or in changing the name of an old one as in this case they cannot again put the plaintiffs in that action to proof of the very matter they then litigated. They cannot again call upon them to establish their location and right of possession at the time this judgment was rendered. It was between the same parties and privies, involved the right of possession to the same property, and determined that at the date of its rendition the plaintiffs in the action were entitled to the possession. Being so entitled at that time how did they lose their title, and how did the respondents acquire that by which they claim the property? As the answer discloses by taking wrongful and fraudulent possession of the property, and while the right of possession was being tried, and during the pendency of the action for that purpose, relocating the property and changing its name in pursuance of a conspiracy to defraud the appellants and to avoid the consequences of a judgment, awarding to them the possession of the property. I am unable to see how by these fraudulent and wrongful acts, the appellants lost their title, or how a valid new title was acquired by the respondents. Of course if there was a valid new title, it was not concluded by the judgment, but that is the very question presented in the answer, by showing in what this new title consisted, and how, if at all, it was acquired. Was there a valid new title acquired by respondents after the judgment? The Star of the West location was a fraud. The possession acquired thereby was tortious and wrongful. So the court adjudged in the ejectment case. But this possession so acquired was made the basis of the Nellie Grant location, without which no location could have been made by Agno, and without which no patent could have been issued to him. How is a patent to a mineral lode claim acquired? By making a lawful location, taking actual possession thereunder, and performing the necessary amount of labor thereon. Now as to the Nellie Grant location,

the possession that supports it was taken under the Star of the West location and all the labor performed thereon by Agno, for all that appears, was performed while the lode was called the Star of the West lode, and as to such labor and possession they are both concluded by the judgment, and as to Agno his grantees and privies are as if no possession had been taken and no labor performed.

And so the question is presented whether a party can suspend the rights of his adversary, and while they are so suspended and his hands completely tied, acquire a valid and unassailable title to the very property in dispute. The Star of the West location and the possession thereby acquired being an indispensable requisite to the validity of the Nellie Grant location, it follows that if the Star of the West location was fraudulent and void, that of the Nellie Grant must be equally so, the Star of the West location being but a link in the chain of title to Agno, and if the judgment is conclusive as to the Star of the West location, it must be equally so as to that of the Nellie Grant.

The case of *Mann* v. *Rogers*, 35 Cal. 316, cited as authority in support of the title acquired by Agno under the name of the Nellie Grant lode, is not in point. It lacks the very element that renders the Agno title invalid. It does not call to its support the tortious possession without which Agno could not have acquired the Nellie Grant title. It required the unity and use by Agno of his entry under the Star of the West title, and the retention of the possession thereunder by appeal, and *supersedeas* to enable him to lay the foundation and build up his Nellie Grant claim. It will be seen from the above case that there was at the time of the litigation between Mann and Rogers a present subsisting operative title by grant in Valligo. This title was purchased by Mann. It was an available title independent of any of the rights of the respective parties litigated in the action. In the case at bar Agno seeks to build up a right out of a possession that was being litigated and which he wrongfully held by force of the appeal. So in the case of *Valentine* v. *Mahoney*, 37 Cal. 389, referred to in the opinion of the majority of the court, the subsequently-acquired title was an outstanding available title drawing with it the right of possession.

An after-acquired title may be a naked title without any beneficial interest, or a right of possession alone.    In either case it is capable of being enforced in connection with the rights that are alone incident to the character of title acquired.    If the same tortious possession is invoked to support the title, and without its aid one cannot be produced, the claim must fall for want of legal support.    Stripped of the possession upon which alone he can found the Nellie Grant title and he has nothing left.    Had he been dispossessed under the writ of restitution or surrendered the possession of the Star of the West before the litigation was terminated he could then have relieved himself of the binding force of the judgment and established a new claim independent of the possession held by reason of the appeal, and this is the doctrine announced in *Montgomery* v. *Whiting*, 40 Cal. 294.    No one doubts but that a person in possession may buy up an outstanding title and avail himself of it.    But this outstanding title must carry with it the right of possession.    He cannot buy up an outstanding title that is not coupled with the right of possession if he is a trespasser, for this will not aid him in defense of his possession.    His tortious possession cannot assist him in such a case.    He cannot use to his benefit the very trespass he is seeking to maintain, and thereby change the legitimate results of the controversy.    He cannot use the process of the court and the remedies afforded by it, to hold wrongful possession of the property, and at the same time make the possession so held the basis of requiring a superior right over his adversary.    He cannot make his trespass work a forfeiture, nor build up a title on such a basis.    The title acquired must be a valid and available one, such that might be shown to exist in a stranger and defeat a recovery in ejectment.    It must be one that carries with it the right of possession and capable of being enforced. I will give an instance that presents the present case in its true light, as distinguished from those cited by the court. Suppose A. was the owner by location of the Nellie Grant lode, but had not been in possession for a year, and could not under our statute maintain ejectment, but if in possession could successfully defend against such action. After his absence for a year, B. enters upon and takes possession

of the property and subjects it to his dominion.   Within a few weeks C. forcibly enters and evicts B.   To regain the possession thus wrongfully taken from him, he institutes his action of ejectment against C.   In order to defeat this action, C. purchases the title of A. and expects by the unity of his tortious possession with A.'s title to successfully defend.   To allow such a doctrine to prevail, C. instead of being placed at a disadvantage, by reason of his trespass, is favored on account of it, and a stale, unavailable title is made good in the hands of a wrong-doer, by the commission of a wrong.   Now, as averred in the answer, this is just what Agno is seeking to do.   The determination of the suit shows that his possession was tortious, and yet by appeal and *supersedeas* he makes it the sole origin of the Nellie Grant title.   When we come to look for the Nellie Grant claims there is none in being until it is brought into existence out of Agno's tortious possession.   By it he makes the change in the name and stakes — changes the inscriptions on the corners — procures a survey, and is enabled to make his record and apply for a patent for the identical property adjudged to belong to the defendants.   If he had returned the possession he might never have been able to have secured a foothold upon the premises thus surrendered up.   But if he had, and made it the basis of a new title, a new suit might possibly have been necessary to determine his right.   But until this tortious possession is restored, he cannot lay a new foundation for a new title.   He cannot build a new title upon the old foundation.   The old foundation of his title, the Star of the West location, and the possession thereunder was concluded by the judgment.   He was bound by this judgment so far as this location was concerned, and the Nellie Grant location being born of the Star of the West location, which had been adjudged void, was itself void.   See *Atherton* v. *Fowler*, 6 Otto, 513, where the court holds that a naked, unlawful trespass cannot initiate a right of pre-emption in the public lands.   The trespass of the Star of the West location could not therefore initiate the right to the Nellie Grant location.

.A judgment which binds the rights of the parties is as effectual as a release or a confirmation by one party to the other.   It

is conclusive of the right and establishes the obligation in eject-
ment to return the property. But for this rule successive trans-
fers and alienations of the property would forever prevent a de-
termination of the controversy. No one would contend that the
judgment was either a bar or an estoppel to a subsequently-acquired
title. But the question presented here is, whether Agno, by his
entry under the Star of the West title, could by appeal and
*supersedeas* stay the execution of the writ of restitution and under
this entry and possession change the name of the same property
and acquire a new title, we think it clear that he could not. The
right of possession was the question under the laws of congress
and the Territory that was litigated, so far as this right is con-
cerned it was decided in favor of appellants. The issuance of
the patent after the possession under the judgment conferred no
new right in this respect, and was under the particular facts of
this case a bare naked legal title which did not carry with it the
beneficial estate. The judgment should therefore prevail as an
estoppel in a court of chancery and operate as effectually as a
release or confirmation by the patentee made prior to the issuance
of the patent. That the judgment may not have been effectual
before the land officer is no reason why it should not prevail in a
court of chancery where the equitable rights of the parties are
invoked *according to the rules and practices of such tribunals.*
A patent may convey the bare naked legal title while the entire
equitable interest and estate may be in another ; such a case would
arise where by a judgment one party is decreed to be the owner
and entitled to the possession of property the title to which was in
another, and that is the situation of the parties to this case. The
judgment determined every right possessed by the parties ante-
rior to the issuance of the patent and leaves the patent simply
evidence of the naked legal title while the beneficial interest in
the property remains in appellants. In such cases the issuance
of the patent confers no new title. It is conclusive in a court of
law but does not determine the rights of the parties in a court of
equity where the holder of the legal title may be decreed a trus-
tee for the equitable owner. The patent issued to Agno. He ob-
tained it by reason of his wrongful possession and perjury, while

the appellants were the real owners of the property. How, then, could he obtain any beneficial interest in the property short of holding possession until a title ripened under the Statute of Limitations, which statute he could not invoke while the property and the right of possession was held by operation of *supersedeas* pending the suit as charged in the answer. If, by the operation of the *supersedeas*, Agno could hold possession and right of possession during its continuance and acquire a title because the party against whom it run could not successfully prosecute the very kind of action it is claimed the law requires, it is simply permitting the Statute of Limitations to run during the pendency of an action to determine this right. The patent is not in fact a new title. If so, in what is it founded? No new entry was made. The old one alone is its basis. It had never been surrendered nor had the writ of restitution dispossessed Agno until after all the foundation he claims for the patent had been laid. After he was dispossessed nothing was done except the bare issuance of the patent.

Estoppels *in pais* are of an equitable character and dependent upon the facts and surroundings of the particular case. When a judgment is so connected with the parties and the subject matter as that for the purpose of preserving a right it ought in equity to prevail, it becomes in fact and effect an estoppel *in pais*. Because it is a judgment which may not be pleaded as a bar, it does not lose its efficacy as any other fact or act on account of its bearing in the case as an estoppel, and the true situation and relation to the controversy may be shown to ascertain its effect and to give to it its proper bearing. It may be good for one purpose and not for another. The relations of the parties to it, the reliance placed upon it by them may make it good when otherwise its effect might be avoided. A party may acknowledge that it is valid under such circumstances as will not permit him to gainsay it. So it may have such a bearing from its particular relations to the controversy that in good conscience it ought not to be ignored. And such was the relation of this judgment to these parties. The defendants' rights had been established; they had been decreed the owners of the property. Agno knew this.

He had in reality became a party to the suit, and to rob the defendants of their property and to set at naught this judgment awarding them the possession, he in company with his confederates entered into the conspiracy disclosed in the answer. In good conscience he ought to be estopped by the judgment.

The judgment having established the right and title of appellants at the date of its rendition, the question is not whether the alleged fraud of Agno operated to defeat his title, but should not operate to prevent a forfeiture of appellant's title? It may be that the rule laid down by the court in reference to the doctrine of estoppel would be good when a prior equitable and legal right is made to yield to a subsequently asserted one, but we deny its applicability to a case where the alleged fraud is sought to be made available to create a forfeiture of a prior equity and prior right. In the one case the question presented is whether the fraud shall operate favorably to the acquisition of a right by defeating the title of the party defrauded, in which case we hold that the rule laid down by the court is greatly relaxed. In the other case it is applicable where a valid subsisting right not founded in fraud is lost by reason of a fraudulent act of the owner. A bare suggestion of the situation of the parties with respect to the property in controversy shows the utter inapplicability of the rule invoked. In the one case the party is allowed to acquire a right by the very acts that are alleged as constituting the estoppel, and in the other the party has the right and the estoppel is invoked to prevent its forfeiture. The real question is, did Agno acquire any rights against appellants by the perpetration of the alleged fraud? If he has acquired any legal advantage by reason of it, is it not subservient to the equitable rights of the defrauded party? If A., the owner of land, conveys it to B., but the deed is not recorded, and C. procures another deed with notice of B.'s rights, will it make any difference what C.'s object was? He is estopped because *per se* the act would be a fraud to allow it to stand.

2. Besides all this Agno and his privies are estopped even by the rule laid down by the court. He made false representations in material matters to the appellants. He made them with full

knowledge of the facts, and the parties to whom they were made were ignorant of the truth of the matter. The representations were made by Agno with the intention that they should be acted upon by appellants, and they were acted upon by them. Because of such representations, false field-notes, surveys and record, they failed to file their adverse claim, and the representations were made willfully and fraudulently to cause such failure in pursuance of a conspiracy to defraud appellants of their property. For the same purpose Agno entered upon the property, tore down the notices and declared to appellants that he had done wrong to interfere with their property and that he should make no further claim thereto, and this in pursuance of the same conspiracy to defraud appellants, and they, acting upon these representations and acts of Agno, failed to file their adverse claim and went forward and performed a large amount of work on the property. All this appears in the answer, and its allegations contain all the elements of an estoppel *in pais*.

3. The notice of the Nellie Grant location, the survey-plats and record in the surveyor-general's office, as the answer alleges, were purposely so drawn, made and entered that they failed to show that this location came in conflict with the Cannon and Cannon Extension locations. They represented a falsehood for the purposes of fraud. They were made to harmonize with the acts and representations of Agno when he tore down the notices and declared that he should make no further claim to the property, and for the same purpose of deceiving and defrauding the appellants. But if the notice, survey, plat and record had been honest and proper, showing a conflict between the two locations, the appellants, under the circumstances, would have been relieved from filing an adverse claim. They were the owners of the entire equitable interest in the property, but their rights, by reason of the fraudulent acts of the respondents, had been suspended. The statute does not provide for an adverse claim upon equitable grounds, but limits it exclusively to such actions as will determine the right of possession. The right of possession may be suspended or it may not set in until some equitable right is adjudicated, but there is no provision under the Mineral Land Act for the

trial of equitable titles of this character, and consequently there is no bar to such actions when, according to the rules of equity, they should be entertained. A party may be finally entitled to the possession, when at the time he is required to interpose his adverse claim he would not be entitled to such possession, which is the only question that can be tried under the act. Then is the equitable right lost by failure to file an adverse claim, when the trial to result from such claim can in no manner affect the equitable right? By the appeal and suspension of the writ of restitution the right of the appellants to possession was suspended. The right was not restored until after this writ became operative, and the answer clearly shows that no new title or right of respondents set in since that time. Both his entry and application for a patent under the charge in the answer were during its suspension, and while a motion for a new trial was pending. There might be some plausibility that such a new right had been acquired as would have required appellants to interpose an adverse claim under the notice, if the notice had been given after and the judgment and right of possession under it were capable of being enforced. When a party is not entitled to the right of possession, he cannot maintain an action when the issue involves solely the right of possession. The necessity of interposing an adverse claim is determined by the right the party may at the time have to the possession. When a recovery upon his right of possession could not be had, he is not required to interpose an adverse claim. Such claim presupposes the right of possession and lays the foundation for the trial of such right. Nor would a judgment so suspended show right of possession. The party finally to be adjudged entitled to possession and restored thereto could not assert and maintain his right, while the operation of the judgment and writ of restitution were suspended. During such suspension the respondents who were in possession were entitled to the possession at the very time it is claimed the appellants should have interposed and brought an action that they could not maintain.

Nor was an adverse claim necessary. Merely changing the name of the property under the circumstances disclosed, without

surrendering possession thus held under the Star of the West location, gave no new right, and left the status of the parties as if the application for the patent had been made under the Star of the West location, while the appellants' right to the possession under the judgment had been suspended.

But if it had been necessary for the appellants to have filed an adverse claim in order to protect their title, they were excused from so doing for the reason that they were not properly notified of the Agno application for a patent. The pretended notice was not sufficient to require them to take any action in the premises. The averment of the answer in substance is that the plaintiffs, conspiring to defraud the defendants, and to cause them to forfeit their title by failing to file an adverse claim, made the official survey, field-notes and official plats of the Nellie Grant location on file and among the records of the surveyor-general's office, to show that such location did not conflict with the Cannon and Cannon Extension locations, or what is equivalent thereto, to fail to show that it did so conflict. With this record, survey and plats admitted to have been so made and drawn for the purposes of fraud, the plaintiffs, to further mislead and deceive the defendants, informed them the Nellie Grant location did not conflict with or embrace any part of the Cannon or Cannon Extension locations, and that they should make no further claim to the defendants' property. The false record, survey and plats they had made, and their false representations were in perfect harmony, and both were in pursuance of a matured conspiracy to fraudulently obtain title to the defendants' property. The defendants had the right to look to the records of the surveyor-general's office, to ascertain if their property had been relocated, or in any manner infringed upon by the plaintiffs or others. The notice posted on the claim necessarily partook of the fraudulent character of the field-notes, plat and survey, and was, in truth, no notice at all, and was not intended to be. It did not call upon the defendants to protect their rights, for it did not show that they were imperiled and did not afford any basis for an adverse claim. This notice was intended by the law to give information instead of concealing it. Acting as a Statute of Limitations, and intend-

ing to cut off the right to claim the property after the expiration of a limited period, it ought clearly to designate what property is claimed, and if it fraudulently conceals the property in order to prevent inquiry and claim, it is no notice.

4. Much is said in the opinion of the court to show that the answer does not contain allegations sufficient to entitle the appellants to a patent, and therefore that the respondents cannot be compelled to convey to them. In other words, that there is not sufficient alleged to entitle appellants to the affirmative relief demanded. It must, however, be remembered that the respondents are seeking to recover by virtue of their own title, and demanding that appellants be perpetually enjoined. They must recover upon the strength of their own title, and not upon the weakness of that of their adversary. If the answer contains a defense it is not subject to demurrer, because it does not state facts sufficient to entitle the defendants to the relief demanded. If it contained sufficient to defeat the plaintiffs' action it is a good answer. It is sufficient to defeat the plaintiffs' action if the answer shows that the defendants are the owners of the equitable title to the property while the plaintiffs hold the naked legal title, or that the plaintiffs are estopped from claiming title by reason of the judgment or *in pais*, even though there had been no demand for affirmative relief. If the patent to Agno prevented appellants from applying for a patent, as it did, and also from taking any steps in that direction, then they were excused from so doing. The law does not require them to do a vain thing; and though they were entitled to a patent they could not procure one while that to Agno was outstanding, or while the property was in his possession, and held there by a suspension of the writ of restitution, and so they were excused from making the effort. All they could do is what they have done at the first opportunity, to show that they were the owners of the equitable interest in the property, and that Agno was trustee for them, holding the legal title for their benefit. Showing this they defeat the plaintiffs' action. By the Cannon and Cannon Extension locations, the property was granted by the government to the appellants, which grant was kept alive and in full force by possession and work upon the

claims, and thereby they became entitled to the exclusive right to take the necessary steps to apply for a patent, and the government having parted with this beneficial interest in the property, and the grant to the appellants never having been divested, there was no room for a second grant to any other person, for as to this property, it had nothing to convey but the naked legal title which it or its grantee held or holds as trustee for the real owner.

A patent is not conclusive evidence of title in a court of equity. The adjudication of the land office is not in all cases final. That tribunal determines and the patent appropriates the legal title, and where the question depends upon that title alone such appropriation is conclusive. But this leaves untouched the equity jurisdiction of the courts to go behind the patent, and if the facts warrant, to make the owner of the legal title but a trustee for the equitable owner, or otherwise to modify or adjust the rights of the parties and decree accordingly. Where the government has parted with its title, and the question becomes one of private right, courts of equity, for the purpose of relieving against fraud, accident or mistake, may look behind a patent and decree in favor of the real owner, though the legal title may be held by another. Where the officers of the land office decide controverted questions of fact in the absence of fraud, impositions or mistake, their decision on the question is final, except it be reversed on appeal in the land department. Fraud, impositions or mistake may be presumed to exist so as to give a court of equity jurisdiction, when the land office issues different patents to different persons for the same property; or when it issues a certificate for a patent which is evidence of a governmental grant, to one person and the patent itself to another for the same property; or when the government having by its valid grant (as in this case by virtue of the Cannon and Cannon Extension locations) conveyed the property to one person, by a title equivalent to a patent, and should thereafter, while such grant remained vested and in full force, convey the same property by patent to another. In all such cases the patent is not conclusive, and courts of equity have jurisdiction to go behind the patent and ascertain

who is the real owner, and decree accordingly. *Johnson* v. *Towsley*, 13 Wall. 81. And so if the answer did not contain averments which entitled the appellants to the affirmative relief demanded, the court had jurisdiction to try and determine the defense that was sufficiently alleged, and the demurrer to the answer should have been overruled.